David. C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
Craig E. Stewart (State Bar No. 129530)
cestewart@jonesday.com
Nathaniel P. Garrett (State Bar No. 248211)
ngarrett@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:    +1.415.626.3939
Facsimile:    +1.415.875.5700

Tharan Gregory Lanier (State Bar No. 138784)
tglanier@jonesday.com
Catherine T. Zeng (State Bar No. 251231)
czeng@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Telephone:    +1.650.739.3939
Facsimile:    +1.630.739.3900

Ryan P. Phair (*pro hac vice*)
ryanphair@paulhastings.com
Michael F. Murray (*pro hac vice*)
michaelmurray@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C. 20036
Telephone:    +1.202.551.1700
Facsimile:    +1.202.551.1705

Stephen J. McIntyre (State Bar No. 274481)
stephenmcintyre@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone:    +1.213.683.6000
Facsimile:    +1.213.627.0705

Attorneys for Defendants
SAP SE and SAP AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CELONIS SE and CELONIS, INC.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SAP SE and SAP AMERICA, INC.,**<br><br>**Defendants.** | **Case No. 3:25-cv-02519-VC**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date:     May 22, 2025<br>Time:     10:00 a.m.<br>Judge:    Hon. Vince Chhabria<br>Courtroom:    4 – 17th Floor |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 22, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Vince Chhabria, District Judge of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Defendants SAP SE and SAP America, Inc. (collectively "SAP" or "Defendants") will, and hereby do, move the Court for an Order under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice all claims asserted in the Complaint filed by Plaintiffs Celonis SE and Celonis, Inc. (collectively, "Celonis"). The motion is made and based upon this Notice of Motion and Motion to Dismiss, the accompanying Declaration of Nathaniel P. Garrett and exhibits attached thereto, the complete files and records in this action, oral argument of counsel, and such other and further matters as the court may consider.

Dated: April 17, 2025

JONES DAY

By: _s/ Nathaniel P. Garrett_
Nathaniel P. Garrett

Attorneys for Defendants
SAP SE and SAP AMERICA, INC.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

CELONIS'S FACTUAL ALLEGATIONS ................................................................ 2

ARGUMENT ............................................................................................................ 4

   I.    THE COMPLAINT SHOULD BE DISMISSED UNDER PRINCIPLES OF INTERNATIONAL COMITY AND FORUM NON COVENIENS. ............................ 4

   II.   THE COMPLAINT FAILS TO STATE AN ANTITRUST CLAIM........................... 6

     A.   SAP has no duty to deal with its rivals. ..................................................... 6

     B.   Celonis does not allege an unlawful tie between two products. ..................... 9

     C.   Celonis does not plausibly allege that SAP sells Signavio below cost. .......... 10

   III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE ADVERTISING......................................................................................... 11

   IV.  THE COMPLAINT FAILS TO STATE A TORTIOUS-INTERFERENCE CLAIM................................................................................................ 13

   V.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER CALIFORNIA'S UCL.................................................................................................. 14

CONCLUSION ....................................................................................................... 14

**Page**

CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
836 F.3d 1171 (9th Cir. 2016) ........................................................ 6, 8, 9

*Am. Academic Suppliers, Inc. v. Beckley-Cardy, Inc.,*
922 F.2d 1317 (7th Cir. 1991) ............................................................. 11

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l. Publ'ns, Inc.,*
108 F.3d 1147 (9th Cir. 1997) ............................................................... 8

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.,*
28 Cal. App. 5th 923 (2018) ................................................................ 14

*Ariix, LLC v. NutriSearch Corp.,*
985 F.3d 1107 (9th Cir. 2021) ............................................................. 12

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
472 U.S. 585 (1985) ............................................................................. 6

*Bobbleheads.com, LLC v. Wright Bros., Inc.,*
259 F. Supp. 3d 1087 (S.D. Cal. 2017) ............................................... 12

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209 (1993) ........................................................................... 10

*Cascade Health Sols. v. PeaceHealth,*
515 F.3d 883 (9th Cir. 2008) ......................................................... 10, 11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
11 Cal.4th 376 (1995) ........................................................................ 13

*Dickens v. NXP Semiconductors,*
703 F. Supp. 3d 1013 (N.D. Cal. 2023) ................................................ 4

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,*
69 F.4th 665 (9th Cir. 2023) ............................................................... 11

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.,*
2013 WL 3930545 (C.D. Cal. June 21, 2013) ....................................... 9

*Fed. Trade Comm'n v. Qualcomm Inc.,*
969 F.3d 974 (9th Cir. 2020) ................................................................ 6

*Freeman v. San Diego Ass'n of Realtors,*
77 Cal. App. 4th 171 (1999) ................................................................. 9

*Genus Lifesciences Inc. v. Lannett Co., Inc.,*
378 F. Supp. 3d 823 (N.D. Cal. 2019) .................................................. 8

*GreenPower Motor Co., Inc. v. Oldridge,*
2022 WL 21737783 (C.D. Cal. Nov. 14, 2022) ..................................... 5

*Grupo Bimbo, S.A. B. De C.V. v. Snak-King Corp.*,
    2014 WL 12610141 (C.D. Cal. Oct. 2, 2014) ................................................................ 14

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
    2010 WL 3619884 (N.D. Cal. Sept. 10, 2010) ........................................................... 14

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ....................................................................... 13

*Kingsway Fin. Servs., Inc. v. Pricewaterhousecoopers, LLP*,
    420 F. Supp. 2d 228 (S.D.N.Y. 2005) ......................................................................... 4

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ..................................................................................... 5

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) ..................................................................................... 8

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) .................................................................................. 4, 5

*Muldoon v. DePuy Orthopaedics, Inc.*,
    2025 WL 372108 (N.D. Cal. Feb. 3, 2025) .............................................................. 12

*N. Pac. Ry. Co. v. United States*,
    356 U.S. 1 (1958) ........................................................................................................ 9

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ................................................................................... 11

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ................................................................................... 8

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
    2016 WL 2621872 (N.D. Cal. May 9, 2016) ........................................................... 12

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ............................................................................................. 13

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*,
    392 F. Supp. 2d 118 (D.P.R. 2005) ........................................................................... 11

*RealPage, Inc. v. Yardi Sys., Inc.*,
    852 F. Supp. 2d 1215 (C.D. Cal. 2012) .................................................................... 13

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    2025 WL 744038 (N.D. Cal. Mar. 7, 2025) ............................................................. 12

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) .................................................................................. 8, 9

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ..................................................................................... 4

*San Jose Constr., Inc. v. S.B.C.C., Inc.*,
    155 Cal. App. 4th 1528 (2007) ................................................................. 13

*Sebastian Int'l, Inc. v. Russolillo*,
    162 F. Supp. 2d 1198 (C.D. Cal. 2001) ..................................................... 13

*Sullivan v. Oracle Corp.*,
    51 Cal.4th 1191 (2011) ............................................................................. 14

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..................................................................... 12

*Taylor Publ'g Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) ..................................................................... 11

*Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29*,
    2013 WL 2154793 (S.D. Cal. May 17, 2013) ............................................. 9

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................... 12

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
    200 F. Supp. 3d 1012 (N.D. Cal. 2016) ..................................................... 8

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ................................................................................... 6

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) ................................................................. 5

**STATUTES**

Cal. Bus. & Prof. Code § 17500 .................................................................. 12

**RULES**

Fed. R. Civ. P. 9 .............................................................................. 1, 11, 12

Fed. R. Civ. P. 12 ....................................................................................... 4

## INTRODUCTION

Celonis's lawsuit is nothing more than an attempt to stifle competition under the guise of asserting antitrust and other claims. In its pending motion for preliminary injunction, Celonis paints a dramatic (but demonstrably false) picture to which SAP will respond as scheduled. But the Court need not even reach that motion because Celonis has no basis to seek any relief at all. The Court should dismiss Celonis's complaint in its entirety for several reasons.

To begin, Celonis's complaint should be dismissed under the principles of international comity and *forum non conveniens*. This is a dispute between two German companies concerning policy decisions made in Germany, and is already in litigation in German courts. Deference to the German courts is appropriate because the United States has a limited interest in this case and Germany provides an adequate forum for resolution.

Additionally, the complaint should be dismissed because Celonis fails to allege facts sufficient to support any of its claims. On monopolization, SAP has no duty to deal with its rivals, and Celonis does not satisfy the narrow exception to that principle: the complaint does not demonstrate that SAP terminated a voluntary course of dealing or sacrificed short-term profits. Celonis's tying and bundling claims are incoherent and unsupported by facts; the complaint never alleges that SAP conditioned the sale of one product on the purchase of another, but rather acknowledges that customers are free to purchase SAP products without having to buy Signavio or refrain from purchasing Celonis. And Celonis has not shown that SAP engaged in below-cost sales sufficient to state a bundling or predatory-pricing claim.

Celonis's false-advertising claims fail to meet the particularity requirements of Rule 9(b) because the complaint does not identify who said what to whom, when or how it was said, or what supposedly was false. Moreover, SAP's explanation of its licensing policies does not constitute commercial advertising or promotion. Nor has Celonis shown that these alleged statements deceived anyone, much less a substantial segment of the audience.

Celonis also has not identified any contract that has been breached or disrupted due to SAP's conduct. Allegations of potential future disruption are insufficient to sustain a claim for tortious interference with contract or prospective economic relations. Furthermore, Celonis has

not demonstrated that SAP's conduct was independently wrongful.

Celonis's claim under California's Unfair Competition Law ("UCL") is derivative of its other claims and falls with them. The UCL claim also fails on its own terms because neither plaintiff is a California resident and the complaint does not allege any conduct in California.

For these reasons, SAP respectfully requests that the Court dismiss Celonis's complaint.

## CELONIS'S FACTUAL ALLEGATIONS

SAP is a Germany-based company that provides enterprise resource planning ("ERP") software to businesses. Dkt. 2-3 ¶¶ 10, 12. Companies use ERP software to run day-to-day business processes, including payrolling, billing, and accounting. *Id.* ¶ 34. SAP's legacy ERP software is known as Enterprise Control Component ("ECC"); its currently offered software is called S/4HANA. *Id.* ¶¶ 67–68. Most of SAP's ERP customers use ECC, which operates on top of databases from competing providers. *Id.* ¶ 97. About 30 percent of SAP's customers use S/4HANA, an ERP application that operates on SAP's HANA database. *Id.* ¶¶ 68, 76, 97. In 2021, SAP acquired Signavio, which offers process mining software. *Id.* ¶ 105. Process mining is a technology that extracts data from ERP systems and analyzes it to provide insights on possible business process improvements. *Id.* ¶¶ 25–27, 32.

Celonis is a Germany-based company that sells process mining software. *Id.* ¶ 7. Celonis and SAP had a contractual partnership beginning in 2012, during which SAP resold Celonis's software and marketed it as "SAP Process Mining by Celonis." *Id.* ¶¶ 102–04. In 2021, after SAP acquired Signavio, the parties' contractual relationship ended. *Id.* ¶ 105.

Although Celonis continues to obtain data from SAP's ERP systems through an "RFC ABAP extractor,"[1] it sued SAP. *Id.* ¶ 125. The gist is that, although SAP has permitted Celonis to use that extractor with SAP systems for years, SAP is now allegedly interfering with it in various ways. Celonis points to a "Note"—Note 3255746—SAP issued in February 2024 stating that SAP's Operational Data Provisioning ("ODP") framework for data extraction and replication

---

[1] "RFC" stands for "remote function call," which is a method for data exchange between two software systems. "ABAP," or "Advanced Business Application Programming," is SAP's proprietary programing language, used to develop and customize SAP applications.

may not be used with an RFC module. *Id.* ¶ 138. Rather, customers wishing to use the ODP framework are told they may access it through "an official and externally-available OData API." *Id.* ¶ 148. According to Celonis, OData is inadequate because an OData "setup" takes more time to extract data from an SAP system than "an RFC level integration." *Id.* ¶ 141. Importantly, however, Celonis concedes that its RFC ABAP extractor is *not* ODP-based, which means that Note 3255746 does *not* tell customers to use SAP's OData over Celonis's RFC. *Id.* ¶ 150.

In the same Note, SAP also recommends that customers use "SAP Datasphere" to move data from SAP sources into third-party applications. *Id.* ¶ 145. According to Celonis, that method is too expensive for the "high-volume data transfers" Celonis requires. *Id.* ¶¶ 140, 163. Again, though, Celonis does not allege that SAP's recommendation precludes use of other methods or that Celonis's RFC ABAP extractor requires use of the SAP Datasphere. In short, it points to no statement directed at Celonis.

SAP announced a "Clean Core Policy" in 2023. *Id.* ¶ 151. The Clean Core Policy allegedly relates to customers migrating from SAP's legacy ECC application to S/4HANA. *Id.* Celonis alleges that SAP has told SAP customers that it will not provide support for problems that arise if the customer uses a data extraction method other than OData-based ODP API or SAP Datasphere. *Id.* ¶¶ 152, 155. Celonis does not allege, however, that SAP ever promised to provide such support, and Celonis admits that its customers that have migrated to S/4HANA continue to use Celonis' RFC ABAP extractor without issue. *Id.* ¶ 157.

Celonis also asserts that SAP salespeople have misled customers about whether Celonis's RFC ABAP extractor is in "compliance." *Id.* ¶ 127; *see id.* ¶¶ 127–36. Celonis points to only a handful of such purported communications, and does not identify any customer or provide sufficient detail to discern what extraction methods were discussed or what was said about them.

Finally, Celonis alleges that SAP disadvantaged Celonis by engaging in illegal tying, bundling, and below-cost pricing. The complaint fails to allege which products were tied or bundled with which other products and on what terms. Similarly, it refers to "promotions" or supposed "free" offerings without providing the actual price or other terms of the offer, let alone any facts establishing that those terms were below cost. *See id.* ¶ 221.

Months before Celonis filed this suit, SAP SE filed a declaratory relief action in Germany against Celonis SE. Declaration of Nathaniel P. Garrett ("Garrett Decl.") Ex. 1. Celonis first complained about SAP's data extraction policies on September 18, 2023, in a letter between the companies. Garrett Decl. Ex. 2. After SAP published Note 3255764, Celonis sent a second letter, claiming that because its RFC ABAP extractor "<u>does not use the ODP API</u>," SAP's Note was misleading and unfair under German and American law. *Id.*, Ex. 3 at 6 (underline in original). In its German declaratory relief action, SAP SE seeks a declaratory judgment that it has not made any untrue, misleading, or detrimental statements to Celonis customers though Note 3255764. *Id.*, Ex. 1.

## ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED UNDER PRINCIPLES OF INTERNATIONAL COMITY AND FORUM NON COVENIENS.[2]

Under the doctrine of adjudicatory comity, courts may decline to exercise jurisdiction over a case before it when that case is pending in a foreign court with proper jurisdiction. *Mujica v. AirScan Inc.*, 771 F.3d 580, 599 (9th Cir. 2014). In such a case, deference is appropriate so long as the foreign proceedings are procedurally fair and do not contravene the laws or public policy of the United States. *Id.* To determine whether to exercise adjudicatory comity, courts consider (1) the strength of the United States' interest in using a foreign forum; (2) the strength of the foreign governments' interests; and (3) the adequacy of the alternative forum. *Id.* at 603.

The United States has a limited interest "when the activity at issue occurred abroad." *Id.* at 605. Celonis is a German-based company that complains about policy decisions made by SAP at its German headquarters. Celonis identifies no acts or statements made from the United States.

---

[2] A defendant can raise the issue of international comity by means of a motion to dismiss under Rule 12(b)(1). *See Kingsway Fin. Servs., Inc. v. Pricewaterhousecoopers, LLP*, 420 F. Supp. 2d 228, 233 (S.D.N.Y. 2005). On a motion under Rule 12(b)(1), the Court may review evidence beyond the complaint without converting the motion into one for summary judgment, and the Court need not presume the truthfulness of the plaintiff's allegations. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Similarly, on a motion to dismiss based on *forum non conveniens*, the Court may consider evidence outside the pleadings and the allegations of the complaint need not be accepted as true. *Dickens v. NXP Semiconductors*, 703 F. Supp. 3d 1013, 1019 (N.D. Cal. 2023).

Moreover, while one plaintiff (Celonis Inc.) is incorporated in the United States, it is a resident of Delaware and New York—not California.  Dkt. 2-3 ¶ 8.  California's interest in providing a forum for harm to its citizens is thus not implicated.  *Mujica*, 771 F.3d at 611.

Germany, conversely, has an interest in "regulating conduct that occurs within [its] borders" and "involves [its] nationals."  *Id.* at 607.  Celonis SE began complaining about SAP's data extraction policies eighteen months ago.  Garrett Decl. Ex. 2 at 1.  Celonis SE sent a letter to SAP Deutschland SE & Co. KG and SAP SE at their *German* address, alleging that SAP had "launched an audacious and illegal campaign to unfairly compete against Celonis . . . ."  *Id.*  SAP has already asked the German courts to resolve these disputes.  *Id.*, Ex. 1.  And Celonis has conceded that German courts provide an adequate forum for resolving SAP's declaratory judgment action.  *Id.*, Ex. 4 at 2 (conceding that the Munich Regional Court I "has factual and local jurisdiction").  The Court should therefore dismiss Celonis's complaint under principles of adjudicatory comity.

Alternatively, the complaint should be dismissed under the doctrine of *forum non conveniens* for similar reasons.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  Under that doctrine, district courts analyze whether an adequate alternative forum exists, and whether the balance of private and public interest factors favors dismissal.  *Id.*  Here, the relevant private interests favor dismissal because the two principal parties are German companies, and the relevant witnesses and documents are primarily based in Germany because that's where the challenged SAP policies were adopted.  The public interest factors favor a German forum because this is a dispute brought by a German plaintiff against a German defendant regarding policy decisions made in Germany.  *See Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1181–82 (10th Cir. 2009) ("Switzerland has a substantial interest in … conduct occurring within its borders" in a "dispute over a failed business relationship").  Accordingly, Celonis's complaint should be dismissed so the parties can resolve their dispute in the proper forum of Germany.  At the least, the Court should stay this action until the German proceeding is concluded.  *See, e.g.*, *GreenPower Motor Co. v. Oldridge*, 2022 WL 21737783, at *7 (C.D. Cal. Nov. 14, 2022).

## II. THE COMPLAINT FAILS TO STATE AN ANTITRUST CLAIM.

Celonis's primary antitrust claim—that SAP is supposedly refusing to provide Celonis access to SAP's software products on terms it wants—fails because Celonis has not come close to alleging facts to bring its claim within the extremely narrow circumstances in which such refusal-to-deal claims are permitted. Similarly, Celonis does not allege facts showing any tying, predatory pricing, or illegal bundling.

### A. SAP has no duty to deal with its rivals.

Monopolization and attempted monopolization claims require, among other things, that the defendant engaged in "anticompetitive conduct." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (citing *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)). Celonis tries to satisfy this element by alleging that SAP is no longer permitting Celonis to use SAP software to extract data in the ways Celonis prefers. But *Trinko* makes clear that companies are not required to assist their rivals. *See* 540 U.S. at 408 ("[A]s a general matter, the Sherman Act does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.") (citation omitted).

Celonis does not allege any facts to escape this general rule. *Trinko* left open the possibility of a "narrow exception" for cases in which the defendant sacrificed short-term profits by terminating a preexisting course of dealing. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016). That narrow exception is based on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985), in which the defendant ski resort "had cooperated for years" with a competing ski resort in issuing a joint ski ticket, but then cancelled the arrangement even though the other ski resort offered to pay the defendant's full retail price. As *Trinko* explained, this "unilateral termination" of the longstanding "voluntary (*and thus presumably profitable*) course of dealing" showed an anticompetitive willingness to sacrifice short-term profits. 540 U.S. at 408-09 (emphasis in original). This exception is "at or near the outer boundary of § 2 liability." *Id.*; *see Qualcomm*, 969 F.3d at 994 ("the *Aspen Skiing* exception should be applied only in rare circumstances").

Celonis does not allege facts showing either that SAP terminated a voluntary course of dealing or that it sacrificed any short-term profits. As for terminating a course of dealing, Celonis alleges that the contractual relationship between Celonis and SAP "ended" in 2021, Dkt. 2-3 ¶ 105, but Celonis does not allege that SAP (rather than Celonis) ended it.[3] Celonis also alleges that, after Celonis used its RFC ABAP Extractor to extract data from SAP systems "for years . . . without any issues," *id.* ¶ 126, SAP issued Note 3255746 telling customers that SAP does not permit ODP-based extractors, *id.* ¶ 138. But Celonis admits its extractor is "*not* ODP-based," and Celonis does not allege that the Note prohibited the RFC extractor Celonis used. *Id.* ¶ 150 (emphasis added). So, Note 3255764 was not a change in any course of dealing. Nor does Celonis allege that it or any of its customers has been charged for extracting data using the RFC ABAP Extractor; so no basis exists for concluding that SAP has made any change in that regard. *Id.* ¶ 107. Similarly, Celonis alleges that SAP's "Clean Core Policy" means that customers using Celonis's extractor will not receive SAP support for any resulting problems that occur when those customers migrate to S/4HANA. *Id.* ¶¶ 151–58. But, again, this is not terminating any course of dealing because Celonis does not allege that SAP ever had a different policy.

Celonis's allegations that SAP is "misinforming" customers about the "compliance" of Celonis's data extraction, *id.* ¶¶ 125–36, likewise do not allege a termination of any course of dealing. Celonis refers to a handful of purported statements to unidentified customers without providing any facts showing what extraction method was being discussed or what SAP said. Similarly, Celonis refers to a slide, *id.* ¶ 131, without identifying any customers with whom the slide was allegedly shared or what was said about it. These sparse allegations—which omit any allegation that any customer relied on the alleged statements to make any purchase decision—do not show that SAP forbade use of Celonis's RFC ABAP Extractor or engaged in any exclusionary conduct. In fact, alleged misstatements cannot support an antitrust claim unless, among other things, the plaintiff shows that the statements were "clearly false," "made to buyers without knowledge of the subject matter" and were "not readily susceptible to neutralization or other

---

[3] Nor could Celonis make such an allegation. As will be explained in the preliminary-injunction papers, the parties' relationship was terminated by Celonis, not SAP.

offset by rivals." *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997); *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 841 (N.D. Cal. 2019). Celonis alleges none of this.

Even if Celonis had sufficiently alleged that SAP terminated a course of dealing, it has not alleged any sacrifice of profits, even in the short term. To the contrary, its theory is that SAP sought to increase its profits by increasing its sales of Signavio. A similar claim was rejected in *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013). In that case, Microsoft had allowed software developers (like Novell) to use APIs and namespace extensions (NSEs) to facilitate running their applications (including Novell's WordPerfect) in Windows. But Microsoft "reversed course" when it introduced Windows 95 and withdrew access to those APIs and NSEs. *Id.* at 1068. Novell sued, asserting that Microsoft's intent was to favor Microsoft's own competing applications (including Microsoft Office). *Id.* at 1068–69. The Tenth Circuit held this was not a valid antitrust claim because, even though Microsoft terminated a prior course of dealing, it did not sacrifice any profits in doing so. *Id.* at 1077. Instead, Microsoft increased its profitability by selling more of its Office applications. *Id.*; *see also Aerotec*, 836 F.3d at 1184 (alleged delivery delays and onerous pricing did not support refusal-to-deal claim); *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132, 1135 (9th Cir. 2004) (telecommunications service provider did not violate Section 2 by changing its pricing structure to "increase its short-term profits" and "eliminate . . . resale" of its product).

Celonis's conclusory assertion that SAP sells Signavio below cost does not change this analysis. As discussed below, Celonis has not alleged facts to show that SAP sold Signavio below cost, let alone made enough below-cost sales to render SAP's policies unprofitable.

What's more, Celonis's attempted-monopolization claim fails for a second, independently sufficient reason: Celonis fails to allege SAP has market power in the process mining market. To make out a claim for attempted monopolization, Celonis must specify the market threatened by SAP and SAP's economic power within that market. *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 200 F. Supp. 3d 1012, 1020 (N.D. Cal. 2016). Celonis also must demonstrate "a dangerous probability of achieving monopoly power." *Rebel Oil Co. v. Atl. Richfield Co.*, 51

1  F.3d 1421, 1432–33 (9th Cir. 1995) (internal quotation marks omitted).  For purposes of this

2  element, shares below 30 percent are presumptively insufficient.  *Id.* at 1438.

3      Celonis alleges that SAP attempted to monopolize the "SAP Process Mining Market."

4  Dkt. 2-3 ¶ 277.  But Celonis makes no real attempt to plead that SAP has power in that alleged

5  market.  Since there is no allegation that SAP has a particular share of this alleged market,

6  Celonis cannot make "the minimum showing of market share required in an attempt[ed

7  monopolization] case."  *Rebel Oil*, 51 F.3d at 1438; *see Terminalift LLC v. Int'l Longshore &*

8  *Warehouse Union Local 29*, 2013 WL 2154793, at *6 (S.D. Cal. May 17, 2013) (dismissing

9  attempted-monopolization claim for failure to plead defendant's market share); *Epicor Software*

10  *Corp. v. Alternative Tech. Sols., Inc.*, 2013 WL 3930545, at *4 (C.D. Cal. June 21, 2013) (same).

11  **B.    Celonis does not allege an unlawful tie between two products.**

12      Celonis has not stated a plausible tying claim because it has not alleged facts showing that

13  SAP conditioned the sale of one product on the buyer also purchasing a second product.  *See*

14  *Aerotec*, 836 F.3d at 1178 ("In a tying arrangement, a seller conditions the sale of one product

15  (the tying product) on the buyer's purchase of a second product (the tied product).") (quotation

16  marks omitted); *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 6 n.4 (1958) (If a "buyer is free to

17  [purchase] either product by itself, there is no tying problem."); *Freeman v. San Diego Ass'n of*

18  *Realtors*, 77 Cal. App. 4th 171, 183 (1999) (applying Cartwright Act and holding that a "tying

19  arrangement under antitrust laws exists when a party agrees to sell one product (the tying product)

20  on the condition that the buyer also purchases a different product (the tied product)").  Indeed,

21  Celonis's tying allegations are incoherent.

22      Celonis alleges that SAP "conditioned migration and support of customer's ERP

23  applications" on customers also purchasing Signavio or at least not purchasing Celonis.  Dkt. 2-3

24  ¶ 289.  This suggests that the tying product is ERP applications, or perhaps migrating and

25  supporting those applications.  But Celonis then defines the "tying product market" not as either

26  of those but rather as the "SAP ERP Data Access Market."  *Id.* ¶ 290.  It is thus unclear what is

27  allegedly being tied to what, which precludes any conclusion that SAP has market power in the

28  tying market.  But whatever the alleged tying product is, Celonis alleges no facts showing that

SAP refuses to sell any of its products or services (ERP applications, migration and support, or data access) unless its customer also purchases Signavio or agrees not to purchase Celonis. No such allegation is possible, as Celonis concedes that customers are free to purchase ERP applications, obtain support for those applications, and extract data from those applications without regard to whether they purchase Signavio or Celonis.

Celonis's theory appears to be that SAP's data extraction policies make it too difficult or expensive for customers that wish to use a process mining application to use Celonis rather than Signavio. But that is not a tying claim because it is not a conditioned sale—*i.e.*, customers are not required to purchase Signavio (or refrain from purchasing Celonis) as a condition of buying or using any SAP product. At best, it is an argument that SAP had a duty to facilitate data extraction by Celonis users in ways that would allow Celonis to compete better against Signavio. That is a refusal-to-deal claim that fails for the reasons discussed above.

### C. Celonis does not plausibly allege that SAP sells Signavio below cost.

As Celonis acknowledges, its bundling and predatory-pricing claims depend on alleging facts showing that SAP sold Signavio below SAP's average variable costs. Dkt. 21 at 24 (citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 895 (9th Cir. 2008) (bundling); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222, 224 (1993) (predatory pricing)). Celonis pleads no such facts.

Celonis alleges that SAP offers "promotions" for SAP ERP users, including "six months free access or a one-time free of charge analysis." Dkt. 2-3 ¶ 113. But Celonis does not allege what products were included in these promotions or what the promotions' terms were. There is thus no basis for concluding that any of the promotions involved any below-cost pricing. Merely stating that a promotion involves something for "free" (*e.g.*, buy two, get one free) does not establish that anything was sold below cost. The same is true of Celonis's allegations that "[a]t one point" SAP "included two years of Signavio for free in certain of its bundled offerings" or that it included Signavio as an "entitlement" in its RISE offering. *Id.* ¶¶ 113–14. Celonis alleges nothing about what was in those alleged bundles, what the pricing was, or what the other terms were—and thus Celonis has not alleged facts showing that any below-cost pricing existed.

Further, even if Celonis had identified any below-cost sales, it alleges no facts regarding the extent of those sales. Merely alleging that a defendant "offered" promotions or at "[a]t one point" included something free in its "bundled offerings" is not enough to establish predatory pricing or below-cost bundling. *See Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 392 F. Supp. 2d 118, 140 (D.P.R. 2005) ("Predation claims cannot be based on occasional instances of allegedly predatory pricing, because they are not likely to drive rivals from the market and to permit the predator to raise prices and profits subsequently."); *Taylor Publ'g Co. v. Jostens, Inc.,* 216 F.3d 465, 478 (5th Cir. 2000) (rejecting predatory pricing claim based on limited instances of alleged instances of below-cost sales); *Am. Academic Suppliers, Inc. v. Beckley-Cardy, Inc.*, 922 F.2d 1317, 1322 (7th Cir. 1991) (defendant's "promotional discounts raise[d] no antitrust problems," even though "they [were] below incremental cost in a superficial sense").

Celonis's predatory-pricing claim also fails because, as noted, Celonis does not plausibly allege that SAP has any market power in the alleged SAP process mining market—the market in which SAP supposedly made below-cost sales. *See* Dkt. 2-3 ¶¶ 323–24. Moreover, Celonis's failure to identify what products were bundled is fatal because a bundling claim requires proof that the defendant had market power over at least one of the products in the bundle. *Cascade*, 515 F.3d at 906 (applying test to near-monopolist). But Celonis is silent on that point.

## III. THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE ADVERTISING.

To state a claim for false advertising, the plaintiff must allege that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008). To plead falsity, a plaintiff must demonstrate a statement was either literally false or literally true but likely to mislead or confuse consumers. *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th Cir. 2023). And when, as here, false advertising claims are grounded in fraud, allegations must satisfy Rule 9(b). *See, e.g.,*

*Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017).

Celonis appears to predicate its false-advertising claims on Paragraph 129, which purports to identify nine alleged misrepresentations regarding Celonis's compliance with SAP data extraction policies. *See* Dkt. 2-3 ¶ 129. To comply with Rule 9(b), however, Celonis "must allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015). Celonis also must identify the "actual recipient" of the alleged misrepresentations (*Muldoon v. DePuy Orthopaedics, Inc.*, 2025 WL 372108, at *3 (N.D. Cal. Feb. 3, 2025)), and the "specific content of the false representations" (*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

The statements identified in Paragraph 129 do not comply with these requirements. Celonis does not identify the particular speaker or recipient of any of the alleged misrepresentations. And several more fail to identify the specific content of the alleged statements, referring vaguely to misrepresentations "concerning noncompliance with [SAP's] indirect static read exception" or "additional costs." Dkt. 2-3 ¶ 129(a), (b), (d), (e), (g), (h).

Further, to state a false-advertising claim, Celonis must identify a statement made in a commercial advertisement or promotion, which means "the actions must be part of an organized campaign to penetrate the relevant market, which typically involves widespread dissemination within the relevant industry." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (internal quotation marks omitted). A handful of statements to an isolated number of customers cannot support a false-advertising claim. *See, e.g.*, *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 2025 WL 744038, at *16 (N.D. Cal. Mar. 7, 2025); *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 2621872, at *5 (N.D. Cal. May 9, 2016). Yet that is all Celonis alleges. *See* Dkt. 2-3 ¶ 129.

Celonis's claim under California's False Advertising Law also fails for a more fundamental reason: the FAL only applies to false or misleading statements "made or disseminated before the public in this state" and "from this state before the public in any state." Cal. Bus. & Prof. Code § 17500. In other words, the FAL "does not allow non-California

1  residents to recover for statements that were not made or disseminated before the public in

2  California." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 n.28 (C.D. Cal. 2011). Here,

3  neither plaintiff is a California resident, and they do not allege that any of the purported

4  statements were made or disseminated before the public in California.

5  **IV. THE COMPLAINT FAILS TO STATE A TORTIOUS-INTERFERENCE CLAIM.**

6      Tortious interference of contact includes five elements: "(1) a valid contract between

7  plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional

8  acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

9  disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v.*

10 *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). To satisfy the fourth element—actual breach

11 or disruption—the plaintiff must either allege an actual breach or intentional actions that resulted

12 in greater expense or burden on the performance of the plaintiff's contractual obligations.

13 *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204–05 (C.D. Cal. 2001).

14     Celonis's complaint does not identify any contract that has been breached or disrupted due

15 to SAP's conduct. This is unsurprising, insofar as Celonis alleges that its favored method for

16 extracting data from SAP systems, its "RFC-based ABAP extractor," is not ODP-based and

17 therefore is unaffected by Note 3255746. Dkt. 2-3 ¶ 150. At best, Celonis alleges that an

18 unnamed client "is considering leaving Celonis for Signavio when its contract with Celonis

19 comes up for impending renewal." *Id.* ¶ 179. Such allegations of potential disruption or breach

20 in the future are insufficient to sustain an interference-with-contract claim. *RealPage, Inc. v.*

21 *Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1231 (C.D. Cal. 2012).

22     To state a claim for intentional interference with prospective economic relations, a

23 plaintiff must allege similar elements to those above, plus interfering conduct that is wrongful by

24 some legal measure other than the fact of interference. *Della Penna v. Toyota Motor Sales,*

25 *U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995). "[A]n act is independently wrongful if it is unlawful,

26 that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other

27 determinable legal standard." *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528,

28 1544–45 (2007) (citation omitted). Here, Celonis alleges that SAP's conduct was independently

wrongful because it violated the UCL. Dkt. 2-3 ¶ 247. But as SAP will now explain, Celonis does not allege a valid claim under the UCL either.

## V. THE COMPLAINT FAILS TO STATE A CLAIM UNDER CALIFORNIA'S UCL.

Celonis does not allege any facts in support of its UCL claim beyond what Celonis alleges for the antitrust, false advertising, and tort claims. Instead, the basis for Celonis's UCL claim is that SAP's "common law torts, false advertising, monopolization, attempted monopolization, tying, bundling, and predatory pricing are blatantly illegal and/or anticompetitive," rendering them both unlawful and unfair under the UCL. Dkt. 2-3 ¶ 337. Because Celonis has not adequately alleged its primary claims, its derivative UCL claim fails as well. *See AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 950 (2018) ("when the underlying legal claim fails, so too will a derivative UCL claim").

Moreover, like its FAL claim, Celonis's UCL claim fails under principles of extraterritoriality because "the UCL does not apply to actions occurring outside of California that injure non-residents." *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 2010 WL 3619884, at *8 (N.D. Cal. Sept. 10, 2010) (citation omitted). "California law is unequivocal: the UCL has no extraterritorial application and only applies where the alleged wrongful acts occurred within the state of California." *Grupo Bimbo, S.A. B. De C.V. v. Snak-King Corp.*, 2014 WL 12610141, at *3 (C.D. Cal. Oct. 2, 2014) (citing *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207–08 (2011)). Here, the complaint fails to identify any conduct in California, so the UCL claim necessarily fails.

## CONCLUSION

For these reasons, SAP's motion to dismiss should be granted.

Dated: April 17, 2025                    JONES DAY


                                         By: s/ *Nathaniel P. Garrett*
                                             Nathaniel P. Garrett

                                         Attorneys for Defendants
                                         SAP SE and SAP AMERICA, INC.