| | |
|---|---|
| David. C. Kiernan (State Bar No. 215335)<br>dkiernan@jonesday.com<br>Craig E. Stewart (State Bar No. 129530)<br>cestewart@jonesday.com<br>Nathaniel P. Garrett (State Bar No. 248211)<br>ngarrett@jonesday.com<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, California 94104<br>Telephone: +1.415.626.3939<br>Facsimile: +1.415.875.5700<br><br>Tharan Gregory Lanier (State Bar No. 138784)<br>tglanier@jonesday.com<br>Catherine T. Zeng (State Bar No. 251231)<br>czeng@jonesday.com<br>JONES DAY<br>1755 Embarcadero Road<br>Palo Alto, California 94303<br>Telephone: +1.650.739.3939<br>Facsimile: +1.630.739.3900<br><br>Attorneys for Defendants<br>SAP SE and SAP AMERICA, INC. | Ryan P. Phair (*pro hac vice*)<br>ryanphair@paulhastings.com<br>Michael F. Murray (*pro hac vice*)<br>michaelmurray@paulhastings.com<br>PAUL HASTINGS LLP<br>2050 M Street NW<br>Washington, D.C. 20036<br>Telephone: +1.202.551.1700<br>Facsimile: +1.202.551.1705<br><br>Stephen J. McIntyre (State Bar No. 274481)<br>stephenmcintyre@paulhastings.com<br>PAUL HASTINGS LLP<br>515 South Flower Street, 25th Floor<br>Los Angeles, California 90071<br>Telephone: +1.213.683.6000<br>Facsimile: +1.213.627.0705 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CELONIS SE and CELONIS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP SE and SAP AMERICA, INC.,<br><br>Defendants. | Case No. 3:25-cv-02519-VC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: June 5, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 4 – 17th Floor |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

I.    THE COURT SHOULD DISMISS OR STAY THIS ACTION IN DEFERENCE TO THE GERMAN LITIGATION. ............................................................................................ 2

II.    CELONIS FAILS TO STATE AN ANTITRUST CLAIM. ................................................... 3

    A.    SAP has no duty to deal with its rivals. ................................................................. 3

    B.    Celonis does not allege dangerous probability of monopolization. ................................ 5

    C.    Celonis does not allege an unlawful tie. ................................................................ 6

    D.    Celonis does not plausibly allege that SAP sells Signavio below cost. ........................... 7

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE ADVERTISING. ............ 8

IV.    THE COMPLAINT FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM. ......... 9

V.    THE COMPLAINT FAILS TO STATE A UCL CLAIM. .................................................. 10

CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ................................................................................................. 6

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010) ................................................................................................... 5

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ................................................................................................. 8

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ................................................................................................................ 7

*Chase Mfg., Inc. v. Johns Manville Corp.*,
  84 F.4th 1157 (10th Cir. 2023) ............................................................................................... 4

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ................................................................................................... 8

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) ............................................................................................................ 9

*Dreamstime.com, LLC v. Google LLC*,
  54 F.4th 1130 (9th Cir. 2022) ................................................................................................. 5

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) ........................................................................................................... 4, 5

*EcoShield Pest Sols. Portland, LLC v. Grit Mktg., LLC*,
  2025 WL 844259 (D. Or. Mar. 18, 2025) ............................................................................... 7

*Grupo Bimbo, S.A. B. De C.V. v. Snak-King Corp.*,
  2014 WL 12610141 (C.D. Cal. Oct. 2, 2014) ....................................................................... 10

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) .................................................................................... 9

*Leyva v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ................................................................................................... 3

*LiveUniverse, Inc. v. Myspace, Inc.*,
  2007 WL 6865852 (C.D. Cal. June 4, 2007), *aff'd*, 304 F. App'x 554 (9th Cir.
  2008) ....................................................................................................................................... 3

## TABLE OF AUTHORITIES
(continued)

Page

*Lorain Journal Co. v. United States*,
  342 U.S. 143 (1951) ................................................................................................................4

*New York v. Meta Platforms, Inc.*,
  66 F.4th 288 (D.C. Cir. 2023) ..................................................................................................3

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) ................................................................................................4

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
  2016 WL 2621872 (N.D. Cal. May 9, 2016) ...........................................................................8

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) ........................................................................................................4, 5, 7

*Philips N. Am., LLC v. Summit Imaging Inc.*,
  2020 WL 6741966 (W.D. Wash. Nov. 16, 2020) ....................................................................3

*RealPage, Inc. v. Yardi Sys., Inc.*,
  852 F. Supp. 2d 1215 (C.D. Cal. 2012) ...................................................................................9

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ...................................................................................................6

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
  471 F. Supp. 3d 981 (N.D. Cal. 2020) .....................................................................................3

*Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*,
  571 F. Supp. 3d 1133 (N.D. Cal. 2021) ...................................................................................5

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (N.D. Cal. 2015) ...................................................................................8

*United States v. Google, LLC*,
  2025 WL 1132012 (E.D. Va. Apr. 17, 2025) ...........................................................................4

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ......................................................................................................1, 3, 4, 5

**STATUTES**

Cal. Bus. & Prof. Code § 17500 .......................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .......................................................................................................................1, 8

**INTRODUCTION**

Celonis' opposition confirms that this dispute belongs in Germany and that the Complaint, even if heard here, does not state a cognizable claim under any theory advanced. The challenged conduct originated at SAP's headquarters in Germany, and is already the subject of a parallel declaratory-relief action between the same German parties. The German action squarely places at issue the central questions Celonis asks this Court to decide, including whether Note 3255746 is misleading, whether SAP's data-extraction architecture forecloses competition, and whether any SAP communication has disparaged Celonis' product. Principles of international comity and *forum non conveniens* counsel strongly in favor of dismissing or, at minimum, staying this action in deference to the ongoing German proceeding.

Even if the Court elects to reach the merits, Celonis' claims collapse under the weight of their own allegations. On antitrust, Celonis tries to recast a refusal-to-deal theory as something else, but *Trinko* and its progeny bar the imposition of a duty to share SAP's proprietary interfaces and technical support with a rival. Celonis' attempt to invoke the narrow *Aspen Skiing* exception fails because it pleads neither the termination of a voluntary, profitable course of dealing nor any sacrifice of short-term profits. The tying, bundling, and predatory-pricing theories fare no better: Celonis identifies no customer that was actually forced to choose Signavio as a condition of obtaining access to its own data, no transaction priced below SAP's incremental cost, and no factual allegations that would establish a dangerous probability of SAP's monopolizing the alleged "Process Mining" sub-market.

Celonis' non-antitrust claims are equally deficient. The false-advertising counts flout Rule 9(b) by failing to identify who said what to whom, when, where, or how; they rely on one-off sales conversations that are not "commercial advertising or promotion" as a matter of law; and they identify no statement made or disseminated in California, a prerequisite to liability under the California False Advertising Law. The tortious-interference counts do not allege that any contract has actually been breached or disrupted, and they lack the independently wrongful conduct needed to support a claim for interference with prospective economic relations. Finally, the derivative UCL claim cannot survive once the predicate theories are dismissed; in any event,

the UCL does not apply extraterritorially to conduct occurring entirely outside California.

The Court should dismiss the Complaint in its entirety or, at minimum, stay these proceedings pending resolution of the overlapping German action.

# ARGUMENT

## I. THE COURT SHOULD DISMISS OR STAY THIS ACTION IN DEFERENCE TO THE GERMAN LITIGATION.

Celonis' opposition does not undermine the straightforward conclusion that this dispute belongs in Germany. Nothing in Celonis' opposition changes the facts that triggered SAP's motion: the challenged policies were conceived and implemented in Germany; both German companies are litigating overlapping issues in a parallel German proceeding; and dismissal (or a stay) will neither deprive Celonis of any substantive right nor leave its claims without a forum.

Celonis argues that deference to Germany is inappropriate because SAP America "engaged in unlawful conduct in the U.S., directed at Celonis' customers in the U.S, causing injury to both Celonis, Inc. and its customers in the U.S., including in California." Dkt. 54 at 19. But none of the allegations cited by Celonis support this assertion. *See* Dkt. 2-3 ¶¶ 12, 113, 127-29, 138, 164, 233, 307. Indeed, the Complaint fails to include a single factual allegation about California, or the United States for that matter. To the contrary, Celonis' Complaint is predicated on decisions—drafting Note 3255746, adopting the Clean Core Policy, formulating the alleged bundling promotions, and executing SAP's data-extraction architecture—made at SAP's headquarters in Walldorf, Germany. *See* Dkt. 46-4.

In conjunction with its opposition, Celonis submits a declaration stating that it has at least 84 customers with SAP-based ERP systems that are headquartered in the United States. Dkt. 54-1 ¶ 4. But Celonis does not allege that any of these customers has been "prevent[ed]" from sharing their data with Celonis, or otherwise affected by SAP's conduct. Dkt. 54 at 7. Celonis argues only that some of these American-based customers "will likely be" impacted by SAP's conduct. Dkt. 54-1 ¶ 7. But the policies that supposedly may impact these customers in the future are already at issue in the German litigation. Given that Celonis cannot identify any current impact to its U.S. customers, comity weighs in favor of staying this action until German

courts adjudicate the legality of SAP's alleged conduct.

Nor can Celonis defeat a stay by arguing that SAP's German complaint "says nothing about SAP's violations of U.S. antitrust law or California tort and unfair competition law." Dkt. 54 at 20. SAP's German complaint indisputably puts at issue some of the claims asserted in this case, including under the Lanham Act and for false advertising. *See* Dkt. 46-3 at 64-65. And it seeks a declaration on some of the dispositive questions in this case, including whether SAP made untrue or misleading statements to Celonis customers (*id.* at 69), whether Note 32255746 gives rise to any claim for unfair competition (*id.* at 70), and whether SAP's conduct forecloses competition (*id.* at 61). Even if the Court does not dismiss this action, a stay "pending resolution of independent proceedings which bear upon the case" will promote efficiency and fairness. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

## II. CELONIS FAILS TO STATE AN ANTITRUST CLAIM.

### A. SAP has no duty to deal with its rivals.

Celonis asserts that *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004), does not apply because Celonis is "not trying to purchase anything from SAP at all or contract with SAP in any way." Dkt. 54 at 11. But *Trinko*'s framework is not so limited. It applies when the plaintiff seeks to use the defendant's facilities or services to support the plaintiff's competing business.[1] The governing principle is that, to safeguard the incentive to innovate, firms that have a developed a valuable infrastructure are not required to "share the source of their advantage." *Trinko*, 540 U.S. at 407; *see also New York v. Meta Platforms, Inc.*, 66 F.4th 288, 305 (D.C. Cir. 2023) ("To consider Facebook's policy as a violation of § 2 would be to suppose that a dominant firm must lend its facilities to its potential competitors."). That principle applies whether the rival seeks to contract directly with the

---

[1] *See, e.g.*, *LiveUniverse, Inc. v. Myspace, Inc.*, 2007 WL 6865852, at *13 (C.D. Cal. June 4, 2007) (dismissing claim that MySpace prevented its users from displaying links or references to a competitor's website), *aff'd*, 304 F. App'x 554 (9th Cir. 2008); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 1002 (N.D. Cal. 2020) (plaintiff failed to state a claim against Facebook under *Trinko* for refusing to make APIs available to access Facebook user data); *Philips N. Am., LLC v. Summit Imaging Inc.*, 2020 WL 6741966, at *6 (W.D. Wash. Nov. 16, 2020) (dismissing claim that ultrasound machine manufacturer did not allow a competing repair service provider to have access to diagnostic software in machine needed for repairs).

defendant or seeks access to the defendant's infrastructure without any contract (or by relying on a contract with the defendant's customer).

Celonis tries to avoid that principle by asserting that data extraction has nothing to do with SAP but involves only the "customers' own data." Dkt. 54 at 7. But that argument ignores Celonis' own allegations. The data at issue has been collected by and is stored in SAP's software, and use of SAP's software is required to extract it. *See, e.g.*, Dkt. 2-3 ¶ 203 (describing "licensing options and technical solutions" needed to extract data); *id.* ¶ 35 (Celonis requires "integration" with SAP's ERP system); *id.* ¶ 123 (asserting that customers rely on their "Software Usage Rights" to extract their data from the ERP application). Indeed, Celonis' tying theory is expressly premised on the allegation that "data extraction" is an SAP "product." *Id.* ¶¶ 289–90. Thus, just as *Novell* sought to use Microsoft's APIs to enable its software to be used with Windows, Celonis is seeking access to, and the benefit of, SAP's software in ways that trigger *Trinko*. Celonis cannot avoid this necessary conclusion simply by declaring it is not asserting a refusal-to-deal claim. *See Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450 (2009) (applying refusal-to-deal precedent even when plaintiff did not explicitly assert such a claim); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1079 (10th Cir. 2013) ("[t]raditional refusal to deal doctrine is not so easily evaded").

*United States v. Google, LLC*, 2025 WL 1132012 (E.D. Va. Apr. 17, 2025), does not address this situation. It merely recognizes that *Trinko* does not apply when the defendant refuses to do business with customers who also do business with a competitor[2] or when the defendant imposes unlawful tying, bundling, or exclusive-dealing arrangements on a customer. 2025 WL 1132012, at *43. Celonis has not alleged that SAP refuses to sell to customers that purchase from Celonis. Nor has Celonis alleged a viable unlawful tying, bundling, or exclusive-dealing arrangement. *See infra*, pp. 5-7. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 463 (1992), is irrelevant for the same reason—it merely states that selling "parts to third parties

---

[2] *See id.* at *43 (citing *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157 (10th Cir. 2023) (defendant allegedly refused to sell to distributors that bought from a competitor); *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) (newspaper allegedly refused to accept advertising from firms that advertised with competing radio station)).

- 4 -                                          DEFS.' REPLY IN SUPP. OF MOT. TO DISMISS
                                                                          3:25-cv-02519-VC

on condition that they buy service from Kodak" is not a unilateral refusal to deal. *Id.* at 464 n.8. No conditional sale is alleged here.

This Court's decision in *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, 571 F. Supp. 3d 1133, 1141 (N.D. Cal. 2021), is also inapplicable. Celonis has not alleged a predatory product redesign (which would require alleging, among other things, that the redesign did not improve the product, *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998–1002 (9th Cir. 2010)).

Celonis' alternative suggestion that it has adequately alleged termination of a course of dealing also fails. First, Celonis does not dispute that it has not alleged facts showing that SAP sacrificed short-term profits. Celonis' claim fails under *Trinko* for that reason alone. *See* Dkt. 46 at 14. Second, Celonis has not, in any event, plausibly alleged that SAP terminated any course of dealing. Celonis asserts SAP allowed use of Celonis' RFC ABAP extractor "for years" but "recently" has prohibited it. Dkt. 54 at 9. But Celonis does not dispute that SAP's Note 3255764 does not apply to that extractor because it is not ODP-based. Instead, Celonis relies only on SAP's purported "statements to customers" and SAP's "clean core policy." *Id.* at 9 n.3. As to the former, however, Celonis has no valid answer to the point that its allegations are too vague to even identify what was said, let alone to meet the requirements for resting an antitrust claim on purported marketing misstatements. *See* Dkt. 46 at 13–14. And, as to the "clean core policy," Celonis does not dispute that there was no change in any policy because SAP has never had a different policy. *Id.* at 13. That leaves Celonis to argue that its claim is "multifaceted." Dkt. 54 at 11 n.6. But that gets Celonis nowhere because none of the alleged individual facets here supports a claim. *linkLine*, 555 U.S. at 457 ("Two wrong claims do not make one that is right."); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022) ("Because each individual action alleged by Dreamstime does not rise to anticompetitive conduct in the relevant market, their collective sum likewise does not.").

**B.  Celonis does not allege dangerous probability of monopolization.**

Celonis' attempted monopolization claim fails for the additional reason that Celonis has not alleged the required dangerous probability of monopolization. Celonis argues that it has done

- 5 -

DEFS.' REPLY IN SUPP. OF MOT. TO DISMISS
3:25-cv-02519-VC

so by alleging "direct evidence" of "actual harm to competition." Dkt. 54 at 13. But Celonis has not alleged any actual harm to competition. It does not point to any "restricted output and supracompetitive prices." *Id.* (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)). Nor does it point to any allegations of customers actually switching to Signavio as a result of any of the challenged conduct. It points instead only to conclusory allegations that SAP has foreclosed "all viable methods of data extraction," *e.g.*, Dkt. 2-3 ¶ 278—allegations that are insufficient because they are factually unsupported and contradicted by Celonis' admission that customers have used Celonis' RFC ABAP extractor for years and continue to do so to this day. *See id.* ¶¶ 126, 157.

### C. Celonis does not allege an unlawful tie.

Celonis argues that it has alleged a "practical" tie because SAP is using "technical restrictions" and "uneconomic" charges to prevent extraction, which is supposedly leaving customers no choice but to purchase Signavio rather than Celonis. Dkt. 54 at 14-15. But Celonis does not allege that any technical restrictions or charges prevent the continued use of Celonis' RFC ABAP extractor in the same way that Celonis alleges that its customers have done for years and continue to do to this day. *See* Dkt. 2-3 ¶¶ 126, 157. Celonis refers again to its allegations about the "clean core policy." Dkt. 54 at 14 (citing Dkt 2-3 ¶¶ 170–75, 286–89). But it cites no case holding that a tie can exist merely because the defendant says it will not provide technological support should the customer opt to use a third party's product rather than the defendant's product. Further, Celonis does not allege facts showing that the alleged lack of technological support has prevented customers from using Celonis. To the contrary, Celonis alleges that its customers have continued to use Celonis' RFC-based ABAP extractor "without issue" after migrating to S/4HANA. Dkt. 2-3 ¶ 157. And even if technological support were needed, that would be a claim that SAP had an affirmative duty to ensure interoperability with Celonis (a claim that fails for the reasons discussed above), not a valid tying claim that SAP refused to sell one product unless the buyer took a second product. *Cf. Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1180 (9th Cir. 2016) (rejecting assertion that a tie can exist merely because the defendant made it "less desirable to purchase from the third party"). Nor is it

- 6 -

1  a "negative tie," Dkt. 54 at 15, given that SAP is not requiring that customers refrain from
2  purchasing from Celonis.

### D. Celonis does not plausibly allege that SAP sells Signavio below cost.

Celonis offers no valid defense of its thread-bare allegations of below-cost pricing. It insists that its allegations are "sufficient," but the only purported facts to which it points are that SAP (1) offered "promotions" with "six months of free access" or a "one-time free of charge analysis," (2) "[a]t one point" included Signavio "for free" in certain bundled offerings, and (3) included Signavio as an "entitlement" in a "bundle." Dkt. 54 at 15 (citing Dkt. 2-3 ¶¶ 113–15). These allegations fail for two reasons. First, because they do not identify the terms of the alleged promotion or bundle (including what commitments were required to receive the promotion or bundled price, or what the total price and the amount of the discount were), they provide no basis for concluding that the pricing was below cost at all. *See EcoShield Pest Sols. Portland, LLC v. Grit Mktg., LLC*, 2025 WL 844259, at *7 (D. Or. Mar. 18, 2025) (dismissing complaint because, although it broadly alleged below-cost pricing, it lacked "any facts about Defendant Grit's costs or facts that Defendant Grit suffered losses due to its pricing").

Second, the allegations say nothing about the extent or duration of the alleged pricing. Celonis argues that the pricing was "methodical" and part of a "strategy," Dkt. 54 at 15, but such buzzwords cannot substitute for facts. Nor is there any basis for Celonis' suggestion that the extent or duration of the pricing is irrelevant. *See* Dkt. 46 at 17. Without facts showing that the pricing was sufficiently prolonged that it could drive competitors from the market, there is no basis for concluding that the pricing was exclusionary rather than the kind of price competition the antitrust laws encourage. See *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 223 (1993) ("[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels [*i.e.*, above cost], they do not threaten competition"); *linkLine*, 555 U.S. at 451 ("To avoid chilling aggressive price competition, we have carefully limited the circumstances under which plaintiffs can state a Sherman Act claim by alleging that prices are too low.").

1  **III. THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE ADVERTISING.**

Celonis' opposition confirms, rather than cures, the three fundamental defects in its false advertising claims that SAP flagged at the motion stage: (1) the Complaint does not satisfy Rule 9(b)'s particularity requirement; (2) the statements Celonis challenges do not constitute "commercial advertising or promotion"; and (3) Celonis does not identify any statement made or disseminated in California.

First, the opposition cites eight supposedly false statements but never identifies a single SAP speaker by name or title, the date on which the statement was purportedly made, or the medium in which it was conveyed. *See* Dkt. 54 at 16; Dkt. 2-3 ¶ 129. That is precisely what Rule 9(b) requires. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1108 (N.D. Cal. 2015) (dismissing where complaint failed to identify "the names of the employees or agents who purportedly made the fraudulent representations"). Celonis' reliance on unidentified "SAP personnel" speaking to customers during unspecified sales calls (Dkt. 2-3 ¶¶ 129(c)–(h)) deprives SAP of the notice Rule 9(b) guarantees. The opposition likewise cites the excerpt of a deck allegedly "provided to Celonis' customers" (Dkt. 2-3 ¶ 131), but again Celonis does not identify the name of the SAP employee who sent the deck, the name of the customer that received it, or the date of its circulation.

Second, even if Celonis' allegations were particularized, they still describe isolated, one-off sales conversations. The false advertising laws require "widespread dissemination" of misleading statements as part of an "organized campaign to penetrate the relevant market." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (internal quotation marks omitted). Celonis relies exclusively on unspecified verbal exchanges with individual customers and partners. Those ad-hoc discussions are not "advertising" because they lack the requisite public dissemination. *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 2621872, at *5 (N.D. Cal. May 9, 2016) (dismissing false advertising claim based upon "isolated statements to a few" customers). In its opposition, Celonis invokes a line of authority holding that even a single promotional presentation to a single customer may be sufficient where the potential customers in the market "are relatively limited in number," *e.g.*, two or three. *Coastal Abstract*

- 8 -   DEFS.' REPLY IN SUPP. OF MOT. TO DISMISS
3:25-cv-02519-VC

*Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).  But Celonis does not claim there are two or three potential customers for process mining.  Just the opposite.  *See* Dkt. 54-1 ¶ 3 (Celonis customers "include many Fortune 500 companies").

Third, Celonis effectively concedes that no challenged statement was "made or disseminated" in California, as Section 17500 requires.  Instead, it points to SAP America's alleged maintenance of an office in California and allegations that, on information and belief, SAP conducted, transacted, or solicited business in California.  Dkt. 54 at 17 (citing Dkt. 2-3 ¶¶ 8, 12, 19, 21).  These allegations aren't close to sufficient.  Non-California residents, like Celonis, can only "recover for statements that were … made or disseminated before the public in California."  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 n.28 (C.D. Cal. 2011).  Celonis cannot dispute that the Complaint is bereft of any such allegation.

**IV. THE COMPLAINT FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM.**

Celonis still does not identify a single contract that has been breached or disrupted.  Celonis cites its allegation that a customer is considering leaving Celonis when its contract comes up for renewal.  Dkt. 54 at 17 n.27 (citing Dkt. 2-3 ¶ 179).  But contingent, future possibilities do not constitute an "actual breach or disruption."  *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1231 (C.D. Cal. 2012).  Celonis also points to allegations that customers have expressed confusion about Celonis' data extraction rights.  Dkt. 54 at 17 n.27 (citing Dkt. 2-3 ¶¶ 176-178, 181).  But fielding customer questions does not rise to the level of a contract disruption.  Celonis does not allege that any contract between itself and a customer has actually been breached or disrupted.

Celonis' Complaint also fails to satisfy the separate requirement that an interference with prospective economic advantage be "independently wrongful."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).  Celonis says its antitrust, UCL, and false-advertising theories supply the necessary wrong, but those predicate claims fail for the reasons set out in SAP's opening brief and above.  Without a viable underlying violation, the prospective-advantage count necessarily falls as well.

### V. THE COMPLAINT FAILS TO STATE A UCL CLAIM.

Off the bat, Celonis' UCL claim fails because the Complaint fails to identify any allegedly wrongful acts that "occurred within the state of California." *Grupo Bimbo, S.A. B. De C.V. v. Snak-King Corp.*, 2014 WL 12610141, at *3 (C.D. Cal. Oct. 2, 2014). The Complaint never identifies a single misstatement made, contract interfered with, or below-cost sale executed in California. Celonis merely refers back to its argument that SAP has an office in California and that SAP conduct has "taken place in the United States." Dkt. 54 at 17; *id.* at 18 n.29. But according to settled law, the wrongful acts must themselves occur within California. And the Complaint does not allege they did.

Moreover, Celonis' derivative UCL claim falls with the primary claims upon which it is based. Celonis argues that conduct can be "unfair" under the UCL even if it is not "unlawful." True, but Celonis does not allege that SAP's conduct was independently unfair. *See* Dkt. 2-3 ¶ 337. Celonis may not amend its complaint by way of opposition.

### CONCLUSION

For these reasons, Defendants' Motion to Dismiss should be granted.

Dated: May 8, 2025

JONES DAY

By: *s/ David C. Kiernan*
David C. Kiernan

Attorneys for Defendants
SAP SE and SAP AMERICA, INC.