UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELONIS SE, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>SAP SE, et al.,<br><br>  Defendants. | Case No. 25-cv-02519-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 46 |

The motion to dismiss is granted in part and denied in part. This order assumes the reader's familiarity with the facts, governing legal standards, and arguments made by the parties.

*Comity and forum non conveniens.* Neither doctrine serves to bar this case. Some of the conduct at issue in this case may be addressed in the German litigation. But this case concerns the legality of SAP's conduct under U.S. antitrust law and the effects of that conduct on U.S. consumers and competitors, including Celonis's U.S. subsidiary. Neither of those issues appears to be part of the German litigation. Therefore, the United States has a strong interest in this case, and Germany provides an inadequate forum for resolving it. *See In re Korean Ramen Antitrust Litigation*, 281 F. Supp. 3d 892, 907–09 (N.D. Cal. 2017).

*Tying.* The tying claims are dismissed because the complaint does not adequately explain how Signavio is being tied to ERP data access (or how Celonis is being negatively tied to ERP data access). The complaint alleges that, by prohibiting certain types of data extractors, Note 3255746 had the practical effect of forcing SAP customers to use Signavio (and not Celonis) if they wanted to extract data from their SAP ERP. But Celonis alleges that the Note still allows customers to use non-ODP-based extractors—and that Celonis's extractor isn't ODP based, and

therefore isn't prohibited by the Note.

Celonis's response to this appears to be that SAP's Clean Core Policy then kicks in to effectively prohibit *any* data extraction method other than SAP's preferred ones, regardless of whether it's ODP based. Celonis alleges that the Clean Core Policy is coercive because, if users violate it, they will lose support for their ERP migration. But Celonis said that it was alleging data access to be the tying product—not migration support. And according to the allegations in the complaint, even under the Clean Core Policy, SAP users can still access their data and then choose Celonis for process mining; they just might not get support for their ERP migration if they do so.[1]

*Bundling and predatory pricing.* These claims are dismissed because the complaint does not include enough detail about SAP's prices (including promotional bundles) and costs to plausibly allege that SAP is engaged in below-cost pricing. Celonis alleges only that SAP has bundled certain products together and that, on information and belief, it sells Signavio below cost as part of a bundle and alone. This is insufficient. *See, e.g.*, *DeSoto Cab Co. v. Uber Technologies*, 2018 WL 10247483, at *9-10 (N.D. Cal. Sep. 24, 2018) (collecting cases); *EcoShield Pest Solutions Portland, LLC v. Grit Marketing, LLC*, 2025 WL 844259, at *7 (D. Or. Mar. 18, 2025).

*Monopolization and attempted monopolization.* These claims are dismissed because Celonis has not alleged with sufficient detail that SAP has engaged in anticompetitive conduct. At bottom, Celonis plausibly alleges only that SAP is refusing to let Celonis and its customers extract customers' data from SAP's applications using Celonis's preferred extraction methods. But SAP has no obligation to let its competitors access its databases in the way they prefer. *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 1000–01 (N.D. Cal. 2020); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013). That SAP's restriction applies directly to its customers rather than to Celonis does not change this. *See LiveUniverse,*

---

[1] This ruling expresses no opinion on whether Celonis could state a tying claim on the theory that SAP unlawfully ties Signavio to support for users' ERP migration.

*Inc. v. MySpace, Inc.*, 304 F. App'x 554, 556–57 (9th Cir. 2008) (affirming dismissal on refusal-to-deal grounds of claim challenging social media platform's rule prohibiting users from linking to competing social media platforms). And unlike in *United States v. Google LLC*, Celonis has not plausibly alleged that SAP engaged in unlawful tying or exclusive dealing, and so has not alleged a separate course of anticompetitive conduct. 2025 WL 1132012, at *43 (E.D. Va. Apr. 17, 2025).

*False advertising.* The false advertising claims are dismissed. First, these claims do not satisfy Rule 9(b), which applies to Lanham Act false advertising claims (at least when such claims are grounded in fraud), as well as to the FAL. *See Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) (Lanham Act); *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911 (N.D. Cal. 2020) (FAL). For several of the alleged misrepresentations, the complaint alleges only that SAP contacted an unnamed Celonis customer "concerning noncompliance with the indirect static read exception." The complaint includes more detail about some alleged statements, but still does not identify their "actual recipient." *Muldoon v. DePuy Orthodontics*, 2025 WL 372108, at *3 (N.D. Cal. Feb. 3, 2025). Nor does it specify the "titles and/or job responsibilities" of the employees "who purportedly made the fraudulent representations." *UMG Recordings, Inc. v. Global Eagle Entertainment*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).

Second, the claims fail because the complaint does not allege that the statements at issue were "sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). Because Celonis alleges only a "handful of private statements," and does not include any real detail about them, it has not plausibly alleged an "organized campaign to penetrate the relevant market." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 2025 WL 744038, at *16 (N.D. Cal. Mar. 7, 2025).

Finally, the FAL claim fails because the complaint does not allege that the targeted statements were "made or disseminated" in or from California. *See* Cal. Bus. & Prof. Code § 17500; *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917–18 (C.D. Cal. 2011).

*UCL.* The UCL claim fails because Celonis does not allege that SAP's allegedly wrongful conduct occurred in California or had effects on California residents. *See Ice Cream Distributors v. Dreyer's Grand Ice Cream*, 2010 WL 3619884, at *8 (N.D. Cal. Sep. 10, 2010).

*Tortious interference*. The motion is denied as to the claim for interference with contractual relations and granted as to the claim for interference with prospective economic advantage. Celonis alleges that SAP's conduct has caused multiple Celonis customers to consider not renewing their contracts (and instead switch to Signavio) and has required Celonis to reassure those customers to prevent them from doing so. This is plausibly a disruption to Celonis's contractual relationships. So the claim for interference with contractual relations survives.

But the claim for interference with prospective economic advantage fails because Celonis does not adequately allege that the interference is independently wrongful. As discussed, the only claim that survives is Celonis's claim for interference with contractual relations. The California Supreme Court has emphasized that the two torts—interference with contractual relations and interference with prospective economic advantage—are distinct. *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020). The primary distinction is that independent wrongfulness beyond the interfering act is an element of the latter but not of the former. *See id.* So the fact that a plaintiff has stated a claim for interference with contractual relations cannot satisfy the independent wrongfulness element of a claim for interference with prospective economic advantage. To hold otherwise would in effect collapse the distinction between the two, because any plaintiff who stated a claim for interference with contractual relations would therefore be able to state a claim for interference with prospective economic advantage. In line with this reasoning, one California Court of Appeal has held (albeit in an unpublished opinion) that interference with contractual relations does not constitute "an independent wrongful act for purposes of a separate claim for" interference with prospective economic advantage. *A. D'Angelo & Sons, Inc. v. Annex Group*, 2016 WL 3397128, at *5 (Cal. Ct. App. June 13, 2016).

\* \* \*

Discovery can move forward immediately on the claim for interference with contractual relations. Dismissal is with leave to amend. Any amended complaint is due 21 days from this order, with a response due 21 days after that. Alternatively, if discovery on the surviving claim uncovers facts that would further support the claims that have been dismissed, Celonis can always seek leave to add back the claims at that time.

**IT IS SO ORDERED.**

Dated: June 30, 2025

VINCE CHHABRIA
United States District Judge