| | |
|---|---|
| David. C. Kiernan (State Bar No. 215335) | Ryan P. Phair (*pro hac vice*) |
| dkiernan@jonesday.com | ryanphair@paulhastings.com |
| Craig E. Stewart (State Bar No. 129530) | Michael F. Murray (*pro hac vice*) |
| cestewart@jonesday.com | michaelmurray@paulhastings.com |
| Nathaniel P. Garrett (State Bar No. 248211) | PAUL HASTINGS LLP |
| ngarrett@jonesday.com | 2050 M Street NW |
| JONES DAY | Washington, D.C. 20036 |
| 555 California Street, 26th Floor | Telephone: +1.202.551.1700 |
| San Francisco, California 94104 | Facsimile: +1.202.551.1705 |
| Telephone: +1.415.626.3939 | |
| Facsimile: +1.415.875.5700 | Stephen J. McIntyre (State Bar No. 274481) |
| | stephenmcintyre@paulhastings.com |
| Tharan Gregory Lanier (State Bar No. 138784) | PAUL HASTINGS LLP |
| tglanier@jonesday.com | 515 South Flower Street, 25th Floor |
| Catherine T. Zeng (State Bar No. 251231) | Los Angeles, California 90071 |
| czeng@jonesday.com | Telephone: +1.213.683.6000 |
| JONES DAY | Facsimile: +1.213.627.0705 |
| 1755 Embarcadero Road | |
| Palo Alto, California 94303 | |
| Telephone: +1.650.739.3939 | |
| Facsimile: +1.630.739.3900 | |

Attorneys for Defendants
SAP SE and SAP AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CELONIS SE and CELONIS, INC.,** | Case No. 3:25-CV-02519-VC |
| **Plaintiffs,** | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| **SAP SE and SAP AMERICA, INC.,** | Date: September 25, 2025 |
| **Defendants.** | Time: 10:00 a.m. |
| | Dept: Hon. Vince Chhabria |
| | Courtroom: 4 – 17th Floor |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I. THE ANTITRUST CLAIMS STILL FAIL. .......................................................... 1

    A. Celonis does not allege an unlawful tie. ................................................... 1

        1. Celonis does not plausibly allege a positive tie. ............................ 2

        2. Celonis does not plausibly allege a negative tie. ........................... 3

    B. The Amended Complaint does not plausibly allege below cost pricing ......... 3

        1. Celonis fails to state a claim for predatory pricing. ....................... 3

        2. Celonis fails to state a claim for illegal bundling. .......................... 4

    C. The refusal to deal doctrine bars Celonis's monopolization claims. .............. 5

II. THE AMENDED COMPLAINT FAILS TO IDENTIFY A CLEAR AND UNAMBIGUOUS PROMISE. ............................................................................... 7

III. CELONIS FAILS TO ALLEGE A FALSE ADVERTISING CLAIM. ................. 8

IV. CELONIS DOES NOT STATE A CLAIM UNDER THE UCL. ......................... 10

V. CELONIS'S DERIVATIVE INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS CLAIM FAILS ............................. 10

CONCLUSION .................................................................................................................. 10

- i -

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

# TABLE OF AUTHORITIES

Page

CASES

*Aceves v. U.S. Bank, N.A.*,
    192 Cal. App. 4th 218 (2011) ..........................................................................................8

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    4 F. Supp. 3d 1123 (D. Ariz. 2014).................................................................................2

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016)......................................................................................3, 6

*Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.*,
    2012 WL 1400302 (C.D. Cal. Apr. 23, 2012) .................................................................9

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
    2018 WL 4334631 (N.D. Cal. Sept. 10, 2018) ................................................................3

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
    2007 WL 3232276 (N.D. Cal. Nov. 1, 2007)...................................................................8

*Badella v. Deniro Mktg. LLC*,
    2011 WL 5358400 (N.D. Cal. Nov. 4, 2011).................................................................10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................3

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993).........................................................................................................4

*Cannon v. Wells Fargo Bank N.A.*,
    917 F. Supp. 2d 1025 (N.D. Cal. 2013) ...........................................................................9

*Cascade Health Sols. v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008)........................................................................................2, 4

*CoStar Grp. Inc. v. Com. Real Estate Exch., Inc.*,
    141 F.4th 1075 (9th Cir. 2025) ........................................................................................6

*CoStar Grp. Inc. v. Com. Real Estate Exch., Inc.*,
    2024 WL 2304182 (9th Cir. May 13, 2024) ....................................................................6

*Eckler v. Wal-Mart Stores, Inc.*,
    2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ...................................................................9

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
    2011 WL 2414567 (E.D. Cal. June 8, 2011)....................................................................8

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

*Gamboa v. Apple Inc.*,
  2025 WL 660190 (N.D. Cal. Feb. 28, 2025) ...................................................................7

*Gross v. Symantec Corp.*,
  2012 WL 3116158 (N.D. Cal. July 31, 2012) ................................................................10

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ............................................................................................................2

*Jones v. ConAgra Foods, Inc.*,
  912 F. Supp. 2d 889 (N.D. Cal. 2012) ............................................................................9

*Mend Health, Inc. v. Carbon Health Techs., Inc.*,
  588 F. Supp. 3d 1049 (C.D. Cal. 2022) ..........................................................................8

*Meredith Lodging LLC v. Vacasa LLC*,
  2021 WL 2546273 (D. Or. June 21, 2021) .....................................................................9

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) ......................................................................................7

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) ........................................................................................................4

*Paladin Assocs., Inc. v. Montana Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) ........................................................................................2

*Precht v. Kia Motors Am., Inc.*,
  2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) ............................................................10

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
  360 F. Supp. 3d 994 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020) .........8

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*,
  392 F. Supp. 2d 118 (D.P.R. 2005) ................................................................................5

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ..........................................................................................7

*Regueiro v. FCA US, LLC*,
  671 F. Supp. 3d 1085 (C.D. Cal. 2023) ........................................................................10

*Teradata Corp. v. SAP SE*,
  2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ................................................................2

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..........................................................................9

- iii -

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ..................................................................................................6

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
    129 F. Supp. 3d 1012 (D. Or. 2015) ..........................................................................3

*W. Concrete Structures Co. v. Mitsui & Co. (U.S.A.), Inc.*,
    760 F.2d 1013 (9th Cir. 1985) ...................................................................................4

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
    668 F.2d 1014 (9th Cir. 1981) ...................................................................................7

### STATUTES

Phillip E. Areeda, Antitrust Law ¶ 749c (2024) ................................................................4

### OTHER AUTHORITIES

Federal Rule of Civil Procedure 8 .....................................................................................1

Federal Rule of Civil Procedure 9 ..................................................................................1, 9

Federal Rule of Civil Procedure 11 ...................................................................................2

- iv -

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

## INTRODUCTION

Celonis's First Amended Complaint does not fix the defects the Court identified. The new pleading still concedes that SAP customers can and do extract their own data, still pleads no facts showing an actual tie or below-cost pricing, and relies on an amorphous "open ecosystem" sound bite to manufacture a promissory estoppel claim that California law does not recognize. What Celonis labels an antitrust violation is, at bottom, nothing more than SAP's lawful decision to manage its own software while offering its customers discounts on bundled solutions. The antitrust, false advertising, UCL, and promissory-estoppel theories therefore collapse under the same weight of missing facts that doomed the original complaint.

Celonis's opposition brief confirms as much. Unable to identify a single customer compelled to buy Signavio, a single sale of Signavio below SAP's costs, or a single statement disseminated beyond a handful of private conversations, Celonis pivots to speculation about SAP's "intent" and cherry-picked marketing slogans. But Rules 8 and 9(b) require facts, not conjecture. Because the amended allegations still fail to plead coercion, below-cost pricing, widespread false advertising, or any clear promise, the Court should dismiss Counts II through XII with prejudice and allow this litigation to proceed solely on the narrow contract-interference claim that survived the first round.

## ARGUMENT

### I. THE ANTITRUST CLAIMS STILL FAIL.

#### A. Celonis does not allege an unlawful tie.

Celonis's opposition asserts a "positive" and "negative" tie: that SAP "ties Signavio to every future software sale" and simultaneously conditions ERP migration support on abandoning Celonis. Yet the Amended Complaint admits SAP offers Signavio in bundles, not that customers must take it. *See* Dkt. 112-3 ¶ 207 (SAP "offered to bundle"); *id.* ¶ 181 (larger discounts for bigger bundles). A voluntary discount is not a tie. Nor is offering a discounted package. And the Clean Core policy, applied uniformly to all third-party software, does not prohibit customers' use of Celonis; it merely assigns to customers the risk of running non-SAP software – an ordinary business choice, not coercion to purchase competing software.

### 1. Celonis does not plausibly allege a positive tie.

Offering two products together as a package is not a tie. *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 11 (1984). Rather, Celonis must plausibly allege that customers who request to purchase only S/4HANA are forced to also purchase Signavio. *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003). Celonis, however, does *not* allege that customers who purchase S/4HANA must also purchase Signavio (nor could counsel make such an allegation consistent with Rule 11). The vague allegation that SAP "ties Signavio to every software sale, offering it for free, or not offering customers an opportunity to decline it as an add-on to their package" (Dkt. 112-3 ¶ 449), does not suffice because it does not assert that SAP refused to sell its ERP separately when requested by a customer.

Further, Celonis's *factual* allegations show SAP *offers*, but does not *require*, Signavio in bundles, sometimes at a discount or low cost. Celonis alleges that SAP "offered to bundle" Signavio with a customer's SAP software, an "offer" that would be unnecessary if customers were compelled to take Signavio. Dkt. 112-3 ¶ 207. Elsewhere, Celonis alleges that customers have been incentivized to take Signavio because SAP offers "steeper" discounts the more software a customer buys. *See id.* ¶ 181. And elsewhere yet, Celonis alleges that SAP charges a "cost" to include Signavio in a bundle with SAP's cloud-based ERP application. *Id.* ¶ 256.

Nor does Celonis argue these inducements "practically" require customers to purchase Signavio "as a matter of economic imperative," which would require at a minimum showing that only a "trivial proportion" of customers purchase S/4HANA without Signavio. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 914 (9th Cir. 2008); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 4 F. Supp. 3d 1123, 1134 (D. Ariz. 2014). Celonis's opposition relies instead on the theory that SAP never sells S/4HANA alone – a theory unsupported by any factual allegations in the Amended Complaint.[1]

---

[1] Celonis cannot salvage its lack of factual allegations by invoking *Teradata Corp. v. SAP SE*, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018). The tying claim in *Teradata* concerns an alleged tie between S/4HANA and the HANA database on which it runs, and has nothing to do with Signavio or Celonis. *See id.* at *13.

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

### 2. Celonis does not plausibly allege a negative tie.

Celonis's disfavored "negative" tie theory can be dispensed with even more easily. A negative tie "occur[s] when the customer promises not to take the tied product from the defendant's competitor, but courts 'rarely encounter[]' such a situation." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (citation omitted). Celonis argues that SAP engages in a negative tie by "condition[ing] ongoing technical support … on abandoning Celonis." Dkt. 117 at 11. Celonis alleges that under the Clean Core policy, SAP will not provide support to shared SAP/Celonis customers if the customer uses Celonis's RFC ABAP extractor "and a problem arises." Dkt. 112-3 ¶¶ 235-237. But the Ninth Circuit has long rejected the notion that making a competitor's product "less desirable"—*e.g.*, by failing to provide competitors with technical support—amounts to an unlawful tie. *Aerotec*, 836 F.3d at 1180. And even if technological support were needed, that would be a claim that SAP had an affirmative duty to assist Celonis users by ensuring interoperability with Celonis (a claim that fails for the reasons discussed below), not a valid tying claim that SAP refused to sell one product unless the buyer took a second product.

### B. The Amended Complaint does not plausibly allege below cost pricing.

Celonis's amended bundling and predatory pricing claims fail because Celonis still has not "include[d] enough detail about SAP's prices (including promotional bundles) and costs to plausibly allege that SAP is engaged in below-cost pricing." Dkt. 100 at 2. Applying *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), courts within this Circuit dismiss predatory pricing and bundling claims when the complaint lacks "factual support for the inference that Defendants priced their [product] below *their* own costs." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1033 (D. Or. 2015) (emphasis in original); *see also Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018 WL 4334631, at *4 (N.D. Cal. Sept. 10, 2018) ("to state a claim for below-cost sales, a plaintiff must plead the cost of the product at issue to the defendant and the defendant's sales prices"). That principle dooms Celonis's claims.

### 1. Celonis fails to state a claim for predatory pricing.

To state a predatory pricing claim, the plaintiff must plausibly allege, first, that "the prices

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

complained of are below an appropriate measure of its rival's costs" (*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 451 (2009)), *i.e.*, "below the seller's marginal or average variable or average total cost." *W. Concrete Structures Co. v. Mitsui & Co. (U.S.A.), Inc.*, 760 F.2d 1013, 1015 (9th Cir. 1985).

Celonis argues that "SAP sells bundled ERP Applications and Signavio for the same price as ERP Applications alone." Dkt. 117 at 12. But a predatory pricing claim—as distinct from a bundling claim—requires that the price of the *entire bundle* is below the seller's costs for the *entire bundle*. *See* Phillip E. Areeda, Antitrust Law ¶ 749c (2024) (predatory pricing claim should not be sustained "absent evidence that the price of the *bundle* [is] less than the appropriate cost measure"). The Amended Complaint never identifies the cost to produce the RISE bundle, let alone its sale price. As a result, Celonis's predatory pricing claim fails at the first step.

Celonis' predatory pricing claim also fails at the second step because it does not allege that SAP has a dangerous probability of recouping any investment in below-cost prices. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 222–24 (1993). For predatory pricing to affect competition, SAP would not only have to monopolize the process mining market, but recover monopoly profits large enough to recoup the predation investment. *Id.* at 224. Here, however, Celonis has not alleged that SAP has monopolized the process mining market or that there is even a dangerous probability of doing so. *See infra.* Part C.2.

### 2. Celonis fails to state a claim for illegal bundling.

Because bundled discounts generally benefit buyers, a bundle is anticompetitive only when the discount—allocated to the competitive product (here, Signavio)—results in a price below the defendant's average variable cost. *Cascade Health*, 515 F.3d at 894. Celonis admits that it has asserted an illegal bundling claim despite lacking any knowledge about "Signavio's internal cost information." Dkt. 117 at 12. This is permissible, Celonis insists, because SAP has included Signavio for "free" in some software bundles, which means SAP necessarily discounted Signavio more than it costs to produce. *Id.* at 12-13.

In so arguing, Celonis misrepresents its own allegations. Celonis argues that "SAP sells bundled ERP Applications and Signavio for the same price as ERP Applications alone—*i.e.*, that

- 4 -

Signavio is sold for free." Dkt. 117 at 12 (citing Dkt. 112-3 ¶¶ 29, 179, 181, 258-59). But the FAC does not in fact allege that the price for ERP applications alone is the same. The cited paragraphs allege that SAP sells a bundle "as part of its RISE offering," Dkt. 112-3 ¶ 179, that the more products customers "select to bundle within their SAP RISE product, the steeper their discount," *id.* ¶ 181, and that, in some instances, SAP promotes Signavio (or a trial version of the software) "for free as part of the SAP RISE package."[2] *Id.* ¶ 258; *see also id.* ¶ 259 (same).

Critically, though, Celonis nowhere alleges any facts demonstrating that SAP sells RISE with Signavio for the same price as RISE without Signavio. Indeed, the Amended Complaint alleges nothing about the price of the RISE package (whether with or without Signavio) or Signavio's average variable cost. The fact that Celonis still refuses to allege such facts, even though they are publicly available, is telling.

Moreover, Celonis still fails to allege that SAP unlawfully bundles Signavio to such an extent that SAP is "likely to drive rivals from the market and to permit the predator to raise prices and profits subsequently." *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 392 F. Supp. 2d 118, 140 (D.P.R. 2005). The Amended Complaint's new allegations concede that certain customers pay for Signavio, and only receive a volume discount for including Signavio in their RISE package. Dkt. 112-3 ¶¶ 174, 181, 184. The Amended Complaint thus remains far too vague to permit the inference that SAP systematically sells Signavio below its average variable cost.

**C. The refusal to deal doctrine bars Celonis's monopolization claims.**

This Court held that "SAP has no obligation to let its competitors access its databases in the way they prefer." Dkt. 100 at 2. Celonis's Amended Complaint does nothing to reduce the force of that conclusion.

**1.** Celonis argues that "SAP has effectively foreclosed ***all*** methods for customers to extract their own data." Dkt. 117 at 13. But, even if the Amended Complaint alleged facts to support that claim, that is the same theory Celonis asserted in the original complaint, and it

---

[2] Celonis's Amended Complaint conspicuously omits its prior concession that when SAP offers Signavio "for free," that offer is for "six months … or a one-time free of charge analysis." Dkt. 1 ¶ 113. Celonis nonetheless still relies on these trial offers for Signavio "discovery edition" to support its predatory pricing theories. Dkt. 112-3 ¶ 176.

remains a duty-to-deal claim governed by *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 410 (2004). Regardless, Celonis concedes that customers continue to use its "primary" and "most robust extractor"—the "RFC ABAP extractor"— today. Dkt. 112-3 ¶¶ 80, 231, 239. Its theory is customers are nonetheless "nervous" to do so and some have switched to Signavio because SAP's Clean Core policy puts the onus on Celonis and its customers to fix problems customers using the RFC ABAP extractor may experience when migrating to S/4HANA. *Id.* ¶ 238. That is a duty-to-deal claim because it asserts that SAP is obligated to sacrifice its own resources to help Celonis compete through technical support.

Nor is there any basis for Celonis's argument that this Court's ruling contravenes the Ninth Circuit's holding that "efforts to limit the abilities of third parties to deal with rivals is … not a refusal to deal." *CoStar Grp. Inc. v. Com. Real Estate Exch., Inc.*, 141 F.4th 1075, 1090 (9th Cir. 2025). *CoStar* was an exclusive dealing case where the defendant contractually forbade its real estate broker customers from sharing their *own website* listings with a rival. *Id.* at 1092. Notably, the plaintiff in *CoStar* expressly disclaimed the theory that the defendant had to provide access to listings that the brokers put on the *defendant*'s website. *See* Reply Brief, *CoStar Grp. Inc. v. Com. Real Estate Exch., Inc.*, 2024 WL 2304182, at *22 (9th Cir. May 13, 2024). That, however, is precisely Celonis's theory: that SAP must make available and affirmatively *support* extraction of data stored in and enriched by *SAP* software. Dkt. 112-3 ¶¶ 295, 299.

There is a "narrow exception" to the refusal-to-deal doctrine for cases in which the defendant sacrificed short-term profits by terminating a preexisting course of dealing. *Aerotec*, 836 F.3d at 1184. Celonis identifies no change in course of dealing, *i.e.*, it does not allege that SAP previously fixed problems created by Celonis's software when SAP customers had moved to the cloud. And even if there were a termination of dealing, Celonis has not alleged any sacrifice of profits, even in the short term.

Nor can Celonis avoid *Trinko* by alleging a monopolization theory based on "making false and misleading statements to customers regarding Celonis." Dkt. 117 at 14. To overcome the presumption that any effect of false statements on competition was de minimus, Celonis must, among other things, allege the false advertising was longstanding, widespread, and practically

- 6 -

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

incapable of refutation. *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1079-80 (10th Cir. 2013). As explained in Part III, Celonis does not allege a pervasive advertising campaign.

**2.** Independently, Celonis's monopolization claim fails because its allegation that SAP possesses monopoly power "in the SAP ERP Data Access Market" is legally invalid. Dkt. 112-3 ¶ 427. Data access is not a distinct, purchasable product; it is a technical dimension of how customers may use SAP's software. To be sure, there are *products* sold on the marketplace (by SAP and others) *to extract* data from SAP software; DataSphere is one of them. *Id.* ¶ 298. But Celonis does not define the "ERP Data Access Market" by reference to this product market. Rather, Celonis defines the market by reference to "technical and legal conditions" associated with the license for *other* products – *i.e.*, S4/HANA and HANA. *Id.* ¶¶ 295-296. These SAP contractual obligations are not a *product* market, and Celonis does not argue otherwise.

**c.** Celonis's attempted monopolization claim fails also because it does not plausibly allege a dangerous probability of monopolizing the "SAP Process Mining Market." Dkt. 112-3 ¶ 437. Despite failing to allege that SAP has more than 30% market share in the market or that SAP is restricting output or imposing supracompetitive prices—the two methods for proving a dangerous probability (*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434, 1438 (9th Cir. 1995)—Celonis argues that a dangerous probability can be inferred from alleged barriers to entry and/or allegations of intent. Dkt. 117 at 16. But where a plaintiff seeks to rely on indirect evidence, the plaintiff must "plausibly allege barriers to entry and barriers to expansion, *in addition to high market share.*" *Gamboa v. Apple Inc.*, 2025 WL 660190, at *11 (N.D. Cal. Feb. 28, 2025) (emphasis added). And while a dangerous probability can be inferred from "*direct* evidence of specific intent plus proof of conduct directed to accomplishing the unlawful design" (*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1029 (9th Cir. 1981) (emphasis added)), the Amended Complaint identifies no memos or statements made by corporate officers disclosing an intent to monopolize the process mining market.

## II. THE AMENDED COMPLAINT FAILS TO IDENTIFY A CLEAR AND UNAMBIGUOUS PROMISE.

Celonis's promissory estoppel claim fails because the Amended Complaint does not

identify a clear and unambiguous promise. SAP's aspirational statements about building an "open enterprise platform" and an "open ecosystem" do not amount to an unambiguous promise to never impose limits on third-party extraction tools.

Celonis argues that whether a statement amounts to an unambiguous promise is a question of fact to be assessed after discovery. Dkt. 117 at 21. That's wrong. Courts routinely dismiss promissory estoppel claims based upon statements that "were devoid of necessary and essential terms—or any terms at all." *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1019 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020); *e.g.*, *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276, at *6 (N.D. Cal. Nov. 1, 2007); *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 2011 WL 2414567, at *6 (E.D. Cal. June 8, 2011).

Alternatively, Celonis argues that SAP's statements are analogous to a bank's promise to "work with" the plaintiff to reinstate and modify the plaintiff's loan, when the bank intended only to foreclose on the plaintiff's property. *See Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226 (2011). But "the scope of performance on the promise" in *Aceves* "was sufficiently definite" because "'[t]he bank either did or did not negotiate.'" *Mend Health, Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1057 (C.D. Cal. 2022) (citation omitted). Here, Celonis never delineates any ascertainable parameters for SAP's purported undertaking; it merely recasts the aspirational phrase "open ecosystem"—an amorphous aspiration that lacks the definiteness required for an enforceable promise—as an absolute bar on all extraction restrictions.

### III. CELONIS FAILS TO ALLEGE A FALSE ADVERTISING CLAIM.

Celonis's Amended Complaint fails to allege that SAP made false statements that were "sufficiently disseminated to the relevant purchasing public" to sustain a false advertising claim. Dkt. 100 at 3. Celonis argues that it has identified statements to 17 companies. Dkt. 117 at 17 (citing Dkt. 112-3 ¶¶ 129, 203, 204, 207). Yet, many of the paragraphs cited by Celonis do not identify a specific statement, either vaguely referencing subject matters (such as "noncompliance with the indirect static read exception") or lacking any statement by SAP at all. *See* Dkt. 112-3 ¶¶ 203(b), (c), (e), 204(a)-(e), (g), (h). Many others do not identify the name (or even title and job responsibility) of the speaker. *See id.* ¶¶ 129, 203(b), (c), (e), (f), 204(a)-(h). Contrary to

Defs.' Reply in Supp. of Mot. to Dismiss First
Am. Compl. 3:25-CV-02519-VC

Celonis's argument, this information is required by Rule 9(b). *UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015); *see also Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.*, 2012 WL 1400302, at *3 (C.D. Cal. Apr. 23, 2012) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.").

What's left are *three* alleged misrepresentations that identify the speaker, the recipient, and the specific content of the communication. Dkt. 112-3 ¶¶ 203(a), (d), 207. Three alleged statements does not a false advertising campaign make. *Meredith Lodging LLC v. Vacasa LLC*, 2021 WL 2546273, at *2 (D. Or. June 21, 2021).

So Celonis reverts to a supposedly misleading chart contained on SAP's website that Celonis claims is missing a checkmark. Celonis alleges SAP should have put a checkmark next to "Enterprise Architecture" because Celonis offers enterprise architecture as an add-on feature through an independent company, Ardoq. Dkt. 112-3 ¶ 213. But Celonis never alleges that SAP's statement has "actually been disproved," *i.e.*, that *Celonis* has enterprise architecture. *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012). As a matter of law, Celonis fails to plead the statement was false. *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012) ("the court may in certain circumstances consider the viability of the alleged consumer law claims based on its review of" the allegedly false statements).

Celonis's FAC claim fails also because none of the alleged misstatements were "made or disseminated" from California. Dkt. 100 at 3. Celonis argues every website statement suffices because the internet is "public facing." Dkt. 117 at 19. Not so. Celonis must "allege[] with sufficient detail that the point of dissemination from which advertising and promotional literature that they saw or could have seen is California." *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1056 (N.D. Cal. 2013). Celonis has not done so. The only other statement Celonis identifies (Dkt. 112-3 ¶ 129) was allegedly made to an employee of a California company (Clorox), but Celonis does not allege or argue that the employee *recipient* is a California resident.

## IV. CELONIS DOES NOT STATE A CLAIM UNDER THE UCL.

The UCL does not apply "where non-residents of California raise claims based on conduct that allegedly occurred outside of the state." *Badella v. Deniro Mktg. LLC*, 2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011). "[T]he location of the alleged conduct giving rise to liability controls application of UCL." *Gross v. Symantec Corp.*, 2012 WL 3116158, at *6 (N.D. Cal. July 31, 2012). Non-residents, like Celonis, may assert claims under the UCL only if "those persons are harmed by wrongful conduct occurring in California." *Regueiro v. FCA US, LLC*, 671 F. Supp. 3d 1085, 1103 (C.D. Cal. 2023). Celonis argues that it has lost contracts with four California-based companies. Dkt. 117 at 20. The determinative factor, however, is "whether [SAP's] wrongful conduct occurred in California." *Precht v. Kia Motors Am., Inc.*, 2014 WL 10988343, at *4-5 (C.D. Cal. Dec. 29, 2014). Celonis does not allege or argue that it did.

## V. CELONIS'S DERIVATIVE INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS CLAIM FAILS.

The parties agree that if Celonis's antitrust, false advertising, promissory estoppel, and UCL claims fail for the reasons stated herein, then those claims cannot serve as the "independently wrongful" predicate for its intentional interference with prospective economic relations claim. Celonis argues that it may base its intentional interference with prospective economic relations claim on its intentional interference with contract claim. Dkt. 117 at 21. But this Court already rejected Celonis's theory: "the fact that a plaintiff has stated a claim for interference with contractual relations cannot satisfy the independent wrongfulness element of" a claim for interference with prospective economic relations. Dkt. 100 at 4.

## CONCLUSION

For these reasons, SAP's motion to dismiss Celonis's Second through Twelfth Claims for Relief should be granted with prejudice.

Dated: September 2, 2025  JONES DAY

By: *s/ Nathaniel P. Garrett*
Nathaniel P. Garrett

Attorneys for Defendants
SAP SE and SAP AMERICA, INC.