UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELONIS SE, et al.,<br><br>             Plaintiffs,<br><br>   v.<br><br>SAP SE, et al.,<br><br>             Defendants. | Case No.  25-cv-02519-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 112, 115 |

SAP's motion to dismiss the amended complaint is granted in part and denied in part. Dkt. No. 115. This ruling assumes the reader's familiarity with the facts, the applicable legal standards, and the arguments made by the parties.[1]

As a threshold matter, SAP's alleged conduct should not be understood as a refusal to deal. Celonis's amended complaint challenges only SAP's dealings with its customers—not its dealings with Celonis—and efforts to prevent one's customers from dealing with one's rivals do not fall under a refusal-to-deal framework. *See* Amended Complaint ¶¶ 38-40; *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, 150 F.4th 1056, 1072 (9th Cir. 2025). To the extent that the Court's prior order suggested otherwise, that was incorrect. *See* Dkt. No. 100, at 2-3. That said, if discovery reveals evidence showing that certain aspects of SAP's conduct are, in fact, better understood as refusals to deal with Celonis, then analyzing those aspects of SAP's conduct under a refusal-to-deal framework at some later stage might be warranted.

*1. Actual Monopolization of the Data Access Market.* The motion to dismiss as to the

---

[1] Celonis's administrative motion to seal portions of the amended complaint is granted. Dkt. No. 112.

actual monopolization claim is denied. Celonis has adequately pled that SAP willfully maintains its monopoly power in the SAP data access market by excluding rivals through means other than competition on the merits. Amended Complaint ¶¶ 294-306, 426-34. SAP argues that Celonis has failed to allege the existence of a "data access" market because "data access" is not a product that is separable from SAP's ERP software. Dkt. No. 115, at 6-7. Although the Court has similar concerns that the data access market might not, in fact, be distinct from either the ERP software market or the process mining market (and discovery might reveal evidence supporting that hypothesis), Celonis has adequately alleged for now that the data access market is separate and that SAP's restrictive data access policies have harmed competition both in that market and in related markets. Amended Complaint ¶¶ 279, 294-306, 319-25, 426-34; *see also id*. ¶¶ 41-43, 379-91.

*2. Attempted Monopolization of the Process Mining Market.* The motion to dismiss as to the attempted monopolization claim is denied. Celonis has adequately pled that SAP is engaging in a course of anticompetitive conduct with the specific intent to monopolize. Celonis alleges that SAP has incrementally barred customers from accessing the data required for process mining and has withdrawn technical support from customers who use anything other than Signavio for no reason other than to stifle competition. *See* Amended Complaint ¶¶ 20 & fig.1, 437. Those allegations alone are enough to satisfy the wrongful conduct and scienter elements of Celonis's attempted monopolization claim. And when SAP's alleged course of conduct is considered in its entirety, it becomes even clearer that Celonis has adequately pled anticompetitive conduct.[2] *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012) (evaluating alleged anticompetitive practices, even ostensibly lawful ones, "in

---

[2] For example, Celonis also alleges that SAP's AI-driven product strategy is anticompetitive and that SAP has orchestrated an organized campaign of misinformation to discourage customers from using Celonis. *See, e.g.*, Amended Complaint ¶¶ 198, 203, 207, 357. Although it is unclear whether those allegations are, on their own, enough to plead predatory or anticompetitive conduct, they are relevant to Celonis's theory that the overall combined effect of SAP's course of conduct is anticompetitive.

the aggregate" to determine their overall effect on competition).

SAP argues that Celonis has not pled a dangerous probability of achieving monopoly power because the complaint lacks allegations specifying SAP's market share in the process mining market. But market power can also be evinced by other factors, such as a defendant's unilateral ability to restrict output or to raise prices. *See Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 926 n.3 (9th Cir. 1980). Here, Celonis alleges that SAP has the power to single-handedly make it more costly or risky for customers to use process mining software by restricting access to the data needed for process mining or by imposing other barriers on customers who are locked into SAP's ERP software. Amended Complaint ¶¶ 134-45, 377, 438. It can therefore be inferred that SAP possesses enough market power in the relevant foremarkets to also have a dangerous probability of achieving monopoly power in the process mining aftermarket.

*3. Illegal Bundling and Predatory Pricing.* The motion to dismiss as to the anticompetitive pricing theory of liability under Section 2 of the Sherman Act is denied. Celonis advances two distinct theories of anticompetitive pricing based on the allegations that SAP has been systematically offering Signavio for free alongside its ERP software: illegal bundling and predatory pricing. *See Cascade Health Solutions. v. PeaceHealth*, 515 F.3d 883, 910 n.21 (9th Cir. 2008) (distinguishing those theories). First, Celonis characterizes the alleged conduct as illegal bundling because the net discount of the Signavio plus ERP bundle is greater than the marginal cost of offering Signavio as part of that bundle. Amended Complaint ¶¶ 475-86. Second, Celonis characterizes the alleged conduct as predatory pricing because offering Signavio for free, by definition, entails offering it below cost, and SAP is well-positioned to recoup its losses later. *Id.* ¶¶ 487-98. It is unclear which theory is more appropriate here because Celonis's allegations are vague as to how often Signavio is sold alone, if ever, versus in a bundle. Regardless, because Celonis has adequately pled that SAP's pricing tactics, whether understood as predatory pricing or as illegal bundling, amount to anticompetitive conduct (or, at the very least, comprise part of SAP's overall course of anticompetitive conduct), it is not necessary to

resolve that ambiguity at this stage.

SAP responds that Celonis has not alleged enough detail about Signavio's cost structure to prevail on either theory of anticompetitive pricing. But the allegations that Signavio has been systematically offered for free are enough. If Signavio's price is often zero, and if the marginal cost of offering Signavio is above zero, then the inference that Signavio's price is lower than its marginal cost can be readily drawn—regardless of Signavio's exact cost.

SAP then argues that that Celonis's own complaint concedes that Signavio is not always offered for free because it alleges that customers are offered steeper discounts if they purchase Signavio as part of the RISE package or that only customers participating in a 180-day free trial may temporarily access Signavio for free. Although SAP's complaint does make such allegations, there are plenty of other allegations that Signavio has often been offered for free to various customers. *Compare id.* ¶¶ 174, 176 & fig.3, 181 (alleging that customers can either get better discounts if they add Signavio onto their software packages or try the "discovery edition" of Signavio), *with id.* ¶¶ 29, 172, 179, 323, 449, 479 (generally alleging that Signavio has been offered for free); *see also id.* ¶¶ 30, 131, 173, 177, 258-59 (giving specific examples of Signavio's being offered for free). Construing those allegations in the light most favorable to the plaintiff, Celonis has adequately pled that SAP's pricing tactics are frequent enough to constitute anticompetitive conduct.

*4. Tying.* The motion to dismiss as to the tying claims is granted. Celonis advances two theories of tying: (1) that SAP enacted a positive tie by offering Signavio in every ERP software sale; and (2) that SAP enacted a negative tie by implicitly conditioning the use of its ERP software on customers' foregoing Celonis. Amended Complaint ¶¶ 20 & fig.1, 27, 147, 225, 227, 448-50. Because Celonis does not provide enough nonconclusory allegations to plead the existence of coercion—the "touchstone issue" of tying claims—it fails to state a claim under either theory. *See Cascade Health*, 515 F.3d at 914; *see also Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 n.8 (9th Cir. 2022) (holding that state antitrust claims brought under the Cartwright Act mirror their federal counterparts).

Celonis's positive tying theory fails because the complaint does not allege that customers who want to purchase only S/4HANA are also forced to take Signavio. Celonis alleges that SAP offers Signavio for free or for cheap in "every software sale" without proactively offering an opportunity to decline. Amended Complaint ¶ 449. But merely offering an extra product for sale is not equivalent to conditioning that sale on a customer's taking the extra product. Had Celonis pled that that SAP refuses to sell ERP software to customers who decline to take Signavio, that would likely constitute coercion for the purposes of stating a tying claim. But merely alleging that SAP offers Signavio alongside its ERP program is not enough.

SAP's negative tying theory similarly fails. Celonis alleges that SAP has enacted various policies over time that have made customers increasingly wary of using Celonis. For example, SAP has allegedly made data extraction prohibitively expensive or infeasible, withheld certain forms of technical support from Celonis customers, imposed extra fees on Celonis customers, and/or threatened Celonis customers with additional licensing requirements. Amended Complaint ¶ 449. Taken together, Celonis argues that such conduct can be reasonably perceived as coercion because it impliedly conditions customers' use of SAP's ERP software on abandoning Celonis. *See Aerotec International, Inc. v. Honeywell International, Inc.*, 836 F.3d 1171, 1180 (9th Cir. 2016). But, as SAP points out, Celonis admits that its customers who have successfully migrated to S/4HANA continue to use Celonis's primary data extractor without issue and that Celonis has a history of successfully supporting customers through that migration. Amended Complaint ¶¶ 239-40. It is difficult to reconcile such allegations with the idea that customers are being coerced into abandoning Celonis.

5. *False Advertising.* The motion to dismiss as to the false advertising claims is denied. Celonis alleges that a chart on SAP's website contained materially false statements about Celonis's offerings and capabilities and harmed Celonis by deceiving potential customers. Amended Complaint ¶¶ 210-13, 414-15. Specifically, Celonis alleges that SAP's chart falsely advertised to the public that Celonis charges customers extra for workflow automation services and that Celonis has no enterprise architecture capabilities. *Id.* ¶¶ 210-13. Those allegations state

5

a claim under the Lanham Act. *See Meredith Lodging LLC v. Vacasa LLC*, 2021 WL 2546273, at *2 (D. Or. June 21, 2021) (listing the elements of a false advertising claim brought under the Lanham Act). And because the alleged misrepresentations on SAP's public website were accessible in California, those same allegations state a claim under the California False Advertising Law. *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 n.28 (C.D. Cal. 2011).

SAP responds that its chart about Celonis's enterprise architecture capabilities is not technically false because Celonis has those capabilities only when paired with an add-on from Ardoq—a different company that is accurately represented in the chart. But which aspects of SAP's chart are, in fact, false or misleading is not appropriate to decide at the pleading stage. And regardless of whether SAP's chart accurately represented Celonis's enterprise architecture capabilities, Celonis clearly alleges that SAP's chart misrepresented its pricing for workflow automation services. Amended Complaint ¶¶ 210 fig.7, 212.[3]

*6. Promissory Estoppel.* The motion to dismiss as to the promissory estoppel claim is granted. Under California law, a promise is enforceable only if it is clear, unambiguous, and definite enough that a court can determine the scope of the duty. *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1095 (C.D. Cal. 1999). Here, Celonis has not identified any such promise. Celonis argues that whether a promise is clear, unambiguous, and definite enough to state a claim is better assessed after discovery. But the statements alleged here are so open-ended on their face that they cannot be deemed actionable at this stage, even drawing every inference in favor of Celonis. *See* Amended Complaint ¶¶ 11-16, 500.

*7. Intentional Interference with Prospective Economic Relations*. The motion to dismiss as to the IIPER claim is denied. In its prior order, the Court allowed Celonis's claim for tortious interference with contractual relations to proceed but dismissed the IIPER claim because Celonis

---

[3] Because the allegations about SAP's website are, on their own, enough to state false advertising claims, there is no further need to rule on the sufficiency of the allegations that SAP conducted a campaign of misinformation by instructing salespeople to mislead clients about Celonis's capabilities in private conversations.

had failed to allege that the tortious interference was independently wrongful. Dkt. No. 100, at 4. Now that Celonis has stated other claims based on the same conduct underpinning the tortious interference claim, it has also adequately pled the independent wrongfulness element of an IIPER claim. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020).

     *8. Unfair Competition Law.* The motion to dismiss as to the UCL claim is denied. Because Celonis has stated claims for antitrust violations, false advertising, and tortious interference based on conduct that has, at least in part, taken place in California or has caused injury in California, it has also adequately pled UCL claims for unlawful, unfair, or fraudulent conduct. *See In re Ethereummax Investor*, 2023 WL 6787827, at *34-35 (C.D. Cal. June 6, 2023) (holding that allegations of antitrust violations and of false advertising are sufficient to state a claim under the UCL); *CRST Van Expedited, Inc. v. Werner Enterprises*, 479 F.3d 1099, 1107 (9th Cir. 2007) (holding that allegations of tortious interference of contractual relations are sufficient to state a claim under the UCL).

* * *

     Although the Court is skeptical that Celonis will be able to successfully amend the tying and promissory estoppel claims, in an abundance of caution, dismissal is with leave to amend, and any amended complaint must be filed within 14 days of this order. However, if Celonis prefers to rest on the current iteration of the complaint, and if discovery on the surviving claims gives rise to evidence that would support the tying and promissory estoppel claims, Celonis may seek leave to file an amended complaint at that time.

     **IT IS SO ORDERED.**

Dated: October 27, 2025

VINCE CHHABRIA
United States District Judge