Michael M. Maddigan (Bar No. 163450)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
michael.maddigan@hoganlovells.com

Celine Crowson (*pro hac vice*)
Jennifer Fleury (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Lauren B. Cury (*pro hac vice*)
Christopher Fitzpatrick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
Tel.: (202) 637-5600
celine.crowson@hoganlovells.com
jennifer.fleury@hoganlovells.com
justin.bernick@hoganlovells.com
anna.shaw@hoganlovells.com
lauren.cury@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

David Perlson (Bar No. 209502)
Gurtej Singh (Bar No. 286547)
Christine Pinnkathok (Bar No. 353430)
Isabella Bosetti (Bar No. 358767)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Phone: (415) 374-2300
david.perlson@hoganlovells.com
tej.singh@hoganlovells.com
christine.pinnkathok@hoganlovells.com
isabella.bosetti@hoganlovells.com

Christopher C. Wheeler (Bar No. 224872)
Alexis J. Loeb (Bar No. 269895)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
cwheeler@fbm.com
aloeb@fbm.com

*Attorneys for Plaintiffs Celonis SE and Celonis, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Celonis SE and Celonis, Inc.<br><br>*Plaintiffs*,<br><br>v.<br><br>SAP SE and SAP America, Inc.<br><br>*Defendants*. | **Case No. 3:25-CV-02519-VC-SK**<br><br>**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS**<br><br>Date: February 26, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on February 26, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Vince Chhabria, District Judge of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Celonis SE and Celonis, Inc., (collectively "Celonis" or "Plaintiffs") will, and hereby do, move the Court for an Order under Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice all claims asserted in the Counterclaims filed by Defendants SAP SE and SAP America, Inc. (collectively, "SAP" or "Defendants"). The motion is made and based upon this Notice of Motion and Motion to Dismiss, the complete files and records in this action, oral argument of counsel, and such other and further matters as the court may consider.

Dated: January 14, 2026                    By: */s/ David Perlson*_____
                                           David Perlson

                                           Attorneys for Plaintiffs CELONIS SE and
                                           CELONIS, INC.

# TABLE OF CONTENTS

**Page(s)**

I.  THE '332 PATENT IS INVALID UNDER 35 U.S.C. § 101 ...........................................1

    A.  The '332 Patent is Directed to an Abstract Idea ......................................................2

    B.  The '332 Patent Lacks an Inventive Concept .........................................................5

II.  THE '259 PATENT IS INVALID UNDER 35 U.S.C. § 101 ...........................................6

    A.  The '259 Patent is Directed to an Abstract Idea ......................................................7

    B.  The '259 Patent Lacks an Inventive Concept .........................................................9

III.  THE '947 PATENT IS INVALID UNDER 35 U.S.C. § 101 .........................................10

    A.  The '947 Patent is Directed to an Abstract Idea ....................................................11

    B.  The '947 Patent Lacks an Inventive Concept .......................................................12

IV.  SAP'S INDIRECT INFRINGEMENT OR AT A MINIMUM, THE PRE-SUIT INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED...............13

    A.  SAP Does Not Plead the Elements of Contributory Infringement ........................13

    B.  SAP Does Not Plead the Elements of Induced Infringement ...............................14

    C.  SAP Does Not Plead Pre-Suit Knowledge ...........................................................14

V.  SAP'S WILLFUL INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED.....15

VI.  SAP'S DIRECT INFRINGEMENT ALLEGATIONS AGAINST THE '947 PATENT SHOULD BE DISMISSED ........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) ...................................................................14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)....................................................................................1, 5

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ..................................................................13

*Bascom Rsch., LLC v. LinkedIn, Inc.*,
  77 F. Supp. 3d 940 (N.D. Cal. 2015) ................................................................3

*Bilski v. Kappos*,
  561 U.S. 593 (2010)......................................................................................11

*Boom! Payments, Inc. v. Stripe, Inc.*,
  No. 19-cv-00590-VC, 2019 WL 6605314 (N.D. Cal. Nov. 19, 2019)
  (Chhabria, J.), *aff'd* 839 F. App'x 528 (Fed. Cir. 2021)..................................5, 12

*Bridge & Post, Inc. v. Verizon Commcn's, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ....................................................................4

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)..............................................................4, 7, 11

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019).....................................................................2, 11

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015).......................................................................................14

*Crandall Techs. LLC v. Vudu, Inc.*,
  No. 20-CV-04849-VC, 2021 WL 521215 (N.D. Cal. Feb. 12, 2021)
  (Chhabria, J.)....................................................................................................3

*Dental Monitoring SAS v. Align Tech., Inc.*,
  No. C 22-07335 WHA, 2023 WL 4297570 (N.D. Cal. June 30, 2023)...................15

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)........................................................................14

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..........................................................................2

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) ...........................................................................12

*Guzik Tech. Enters., Inc. v. W. Digital Corp.*,
  No. 11-CV-03786-PSG, 2012 WL 1669355 (N.D. Cal. May 11, 2012) ................................14

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) .................................................................................8

*Hypermedia Navigation LLC v. Google LLC*,
  No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)....................................14

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
  50 F.4th 1371 (Fed. Cir. 2022)..................................................................................12

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)..........................................................................5, 9, 12

*Intell. Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017)............................................................................6, 8

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)...............................................................................3

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015).................................................................................10

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018)............................................................................3, 4

*In re Jobin*,
  811 F. App'x 633 (Fed. Cir. 2020) .............................................................................3

*Longitude Licensing Ltd. v. Google, LLC*,
  No. 23-CV-03046-VC, 2023 WL 7109896 (N.D. Cal. Oct. 27, 2023), *aff'd*,
  No. 2024-1202, 2025 WL 1249136 (Fed. Cir. Apr. 30, 2025) .................................................1

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
  566 U.S. 66 (2012).................................................................................................5

*Monsanto Co. v. Syngenta Seeds, Inc.*,
  503 F.3d 1352 (Fed. Cir. 2007)..................................................................................15

*MyMail, Ltd. v. ooVoo, LLC*,
  No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) .........................................8, 11

*Omnitracs, LLC v. Motive Techs., Inc.*,
  No. 23-CV-05261-RFL, 2024 WL 2886047 (N.D. Cal. Feb. 12, 2024)..................................15

*Orostream LLC v. Actiontec Elecs., Inc.*,
No. 19-CV-01607-VC, 2019 WL 4729538 (N.D. Cal. Aug. 2, 2019)
(Chhabria, J.)..................................................................................................5, 8

*P2i Ltd. v. Favored Tech USA Corp.*,
No. 23-CV-01690-AMO, 2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ......................14, 15

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310, 1317 (Fed. Cir. 2021) ...........................................................3, 7, 11

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017)..................................................................2, 3

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)......................................................................5

*SynKloud Techs., LLC v. HP Inc.*,
490 F. Supp. 3d 806 (D. Del. 2020)..............................................................8, 9

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
657 F. App'x 991 (Fed. Cir. 2016) .................................................................13

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1378 (Fed. Cir. 2019).........................................................6, 9, 10, 13

*Tranxition, Inc. v. Lenovo (United States) Inc.*,
664 F. App'x 968 (Fed. Cir. 2016) ...........................................................4, 7, 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017).................................................................9, 12

*Universal Secure Registry LLC v. Apple Inc.*,
469 F. Supp. 3d 231 (D. Del. 2020), *aff'd*, 10 F.4th 1342 (Fed. Cir. 2021) ............................5

*WhitServe LLC v. Dropbox, Inc.*,
854 F. App'x 367 (Fed. Cir. 2021) .........................................................7, 9, 11, 13

**Statutes**

35 U.S.C. § 101.................................................................................1, 2, 6, 10

## <u>NOTES ON CITATIONS</u>

- Defendants and Counterclaim Plaintiffs, SAP SE and SAP America, Inc. are referred to as "SAP."

- Plaintiffs and Counterclaim Defendants Celonis SE and Celonis, Inc. are referred to as "Celonis."

- References to SAP's Counterclaims (Dkt. 131) are designated by "Countercl." followed by the paragraph or exhibit number.

- The patents asserted in the Counterclaims, United States Patent Nos. 8,818,947 (the '947 Patent), 11,416,259 (the '259 Patent), and 11,354,332 (the '332 Patent) are collectively referred to as the "Asserted Patents." References to the Asserted Patents are indicated by column and line number, or by claim number.

The Counterclaims should be dismissed because each Asserted Patent is ineligible under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The Asserted Patents are directed to abstract ideas concerning storing, sending, and getting access to data. The claims contain nothing more than functional recitations of conventional technology with no new hardware, software, or methods even suggested. These are the types of patent claims that courts routinely invalidate under § 101. Even were the Asserted Patents not invalid as a matter of law, the conclusory allegations in SAP's Counterclaims fail to state a plausible claim for indirect infringement. Nor does SAP allege Celonis had knowledge of any of the Asserted Patents, much less knowledge of infringement, prior to the filing of the Counterclaims—a fatal defect for SAP's pre-suit induced and contributory infringement and claims for willfulness. Finally, SAP fails to plausibly allege direct infringement of the '947 Patent by Celonis as SAP alleges the method steps are performed by SAP itself. The Counterclaims should be dismissed in their entirety.

## ARGUMENT

## I.    THE '332 PATENT IS INVALID UNDER 35 U.S.C. § 101

The '332 Patent, entitled "Enabling Data Access by External Cloud-Based Analytics System," issued on June 7, 2022. The specification explains how businesses store "data in a database system" and provide "metadata that defines how the data is stored and how the data is accessed." '332 Pat. at 1:7-10. Existing "cloud-based analytics systems" integrate an "analytics engine" to directly process the enterprise data. *Id.* at 1:10-18. The specification states these "traditional techniques" cause "performance issues" because of the "complexity" of the data and "missing metadata." *Id.* at 1:30-33. To purportedly address these alleged drawbacks, the '332 Patent transforms the metadata describing the enterprise data's storage to an interoperable format and sends it to the analytics engine so it can access the data. *Id.* at 5:18-24.

The only asserted claim from this patent, claim 1[1], recites a method for enabling access by

---

[1] The Counterclaims assert only claim 1 of the '332 Patent, claim 1 of the '259 Patent, and claims 8 and 9 of the '947 Patent, and treat those claims as representative. Countercl. ¶¶ 82, 118, 46. *Longitude Licensing Ltd. v. Google, LLC*, No. 23-CV-03046-VC, 2023 WL 7109896, at *1 (N.D. Cal. Oct. 27, 2023), *aff'd*, No. 2024-1202, 2025 WL 1249136 (Fed. Cir. Apr. 30, 2025) (Chabbria

formatting and sending the metadata:

1. A computer-implemented method for accessing data provided in a first system by a database (DB)-based analytics engine of a second system, the method being executed by one or more processors and comprising:

retrieving data metadata associated with data stored within a database system of an enterprise, the data metadata being provided in a first format and being used by the first system to store and access the data, the data metadata describing how data is stored within the first system and comprising entity definitions and relationships between entities;

providing, by a metadata provider executed within the first system, a metadata document including the data metadata provided in an interoperable format transformed from the first format, the interoperable format being unbound to any analytics engine;

receiving, by integration services executed within a cloud service, the metadata document in response to a request issued by the integration services to the first system;

processing, by a deployer of the integration services, the metadata document to provide analytics metadata in a second format, the analytics metadata comprising one or more of data definition language (DDL) statements and data modification language (DML) statements, the analytics metadata being stored in the second system and being specific to the DB-based analytics engine to be consumable by the DB-based analytics engine to access the data from the database system of the enterprise; and

retrieving, by the DB-based analytics engine, the data from the database system of the enterprise based on the analytics metadata to provide analytics data based on the data.

## A.     <u>The '332 Patent is Directed to an Abstract Idea</u>

In determining whether claims are directed to an abstract idea, a court must look at the "focus of the claims," *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016), and "consider the claims in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 765 (Fed. Cir. 2019) (cleaned up). Here, while lengthy, the claim language is recited in highly generic terms, focusing on an "abstract end-result," not on "a specific means or method for improving technology." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted). Claim 1 recites a method where (1) an "enterprise" system contains "metadata" in a first format that describes how data is stored in a database of the enterprise system, (2) the

---

J.) (treating asserted claims as representative and granting motion to dismiss in its entirety under § 101. SAP should not be permitted to make any arguments regarding them in opposition. Should it do so, Celonis reserves the right to address those arguments in its Reply.

enterprise system transforms this metadata into an "interoperable" format and sends it in a document, and (3) a "cloud service" receives that document and reformats the metadata into a format "specific" to a "database-based analytics engine" so it can access and analyze the data within the enterprise database. Thus, when viewed as a whole, the '332 Patent is directed towards the abstract idea of enabling access to data by sharing a document describing the organization of the stored data in a standardized format.

The Federal Circuit has repeatedly found that "acquiring and organizing information . . . is an abstract idea." *Interval Licensing LLC, Inc*., 896 F.3d at 1345; *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) (abstract idea of "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization"); *In re Jobin*, 811 F. App'x 633, 637 (Fed. Cir. 2020) (finding a patent "directed to the collection, organization, grouping, and storage of data" abstract despite "its recitation of servers and databases"); *see also Bascom Rsch., LLC v. LinkedIn, Inc*., 77 F. Supp. 3d 940, 949 (N.D. Cal. 2015) (a claim directed to storing relationships between document objects "simply describes the abstract idea of creating, storing and using relationships between objects."). Sending the organization of data stored in a first system to allow a second system to access the data, to which the '332 Patent is also directed, is abstract as well. For example, in *PersonalWeb Techs. LLC v. Google LLC*, the Federal Circuit found that claims sending "content-based identifiers," that classified data on a first computer, to a second computer to allow it access to the data "perform[ed] an abstract data-management function—whether controlling access to data, retrieving data, or marking data for deletion." 8 F.4th 1310, 1317 (Fed. Cir. 2021); *Crandall Techs. LLC v. Vudu, Inc.,* No. 20-CV-04849-VC, 2021 WL 521215, at *1 (N.D. Cal. Feb. 12, 2021) (finding claims directed to "transmitting information, including instructions and other types of data, from one device to another" abstract) (Chhabria, J.). "[A]dding" one abstract idea to another abstract idea "does not render the claim non-abstract." *RecogniCorp, LLC,* 855 F.3d at 1327.

The asserted claim also provides no details on how the metadata is transformed into an "interoperable" format. Nor does the asserted claim describe how the metadata is reformatted to

allow the "database-based analytics engine" to obtain access to the enterprise database. *Interval Licensing LLC v. AOL, Inc.,* 896 F.3d 1335, 1346 (Fed. Cir. 2018) (finding claims abstract that recite a function without "explaining how that is accomplished, let alone providing a technical means for performing that function."). The claims also recite the use of these conventional components, but do not recite any "specific asserted improvement in computer capabilities," to render the claims directed to a non-abstract idea. *BSG Tech LLC v. Buyseasons, Inc.,* 899 F.3d 1281, 1286 (Fed. Cir. 2018) (citation omitted).

The fact the claim recites a "computer-implemented method" does not detract from the focus of the claims being directed to the abstract idea. The claim recites generic, conventional computer components—a "processor," "database," "metadata," "analytics engine," and a "cloud service." *Tranxition, Inc. v. Lenovo (United States) Inc.,* 664 F. App'x 968, 972 (Fed. Cir. 2016) ("generic computer implementation, using routine, conventional activities, of the abstract idea, is [] insufficient to transform the patent-ineligible abstract idea into patent-eligible subject matter.") (internal quotations and citations omitted). The specification admits that each of these components can be performed using "general purpose" computer components.'332 Pat. at 12:10-14 (explaining any "general purpose" processor of "any kind of computer" can be used); *id.* at 12:38-48 (The claims can be implemented in any "backend," "middleware," or "front-end" component of a computer system, or "any combination of them" and the "components [] can be connected by any form or medium of digital data communication such as a communication network."). Moreover, the "analytics engine," and the "cloud service," existed in the industry at the time of the filing, along with the means to integrate the two. *See e.g., id.* at 1:7-10 (explaining how "enterprise database systems" with "metadata" exist, including non-limiting examples SAP Hana); *id.* at 1:10-18, 25-29 ("traditional techniques" integrate known "cloud-based analytics systems" with enterprise systems, the resulting integration referred to as "database (DB) analytics engines").

The Counterclaims make repeated conclusory assertions that the '332 Patent is "novel." Countercl. ¶¶ 33-34. Initially, the Court need not accept these "legal conclusions as true, even if couched as factual allegations." *Bridge & Post, Inc. v. Verizon Commc'n's, Inc.,* 778 F. App'x 882,

894 (Fed. Cir. 2019). And SAP's conclusory allegations to the "method's novelty and usefulness – even if somehow true – do not strip the method of its fundamentally abstract nature." *Boom! Payments, Inc. v. Stripe, Inc.,* No. 19-cv-00590-VC, 2019 WL 6605314, at *1 (N.D. Cal. Nov. 19, 2019) (Chhabria, J.), *aff'd* 839 F. App'x 528 (Fed. Cir. 2021). SAP alleges "a specific, structured combination of particular actions designed to provide access to data by external cloud-based analytics systems," provides the purported "technological improvement." Countercl. ¶ 34. Even if, as SAP alleges, a supposed goal is to "ensure that enterprise data can be efficiently accessed and processed by a cloud-based analytics engine" (*id.*), the claims are devoid of the "mechanism" to do so. *Orostream LLC v. Actiontec Elecs., Inc.*, No. 19-CV-01607-VC, 2019 WL 4729538, at *1 (N.D. Cal. Aug. 2, 2019) (Chhabria, J.) (finding claims patent-ineligible where the "goal" of reducing communication delay was "clear, but the mechanism is missing: nothing in the claim explains how the delay is avoided."). And using conventional computer components to implement an abstract idea "to increase the speed or efficiency" does not confer patent eligibility as a matter of law. *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).

### B.    The '332 Patent Lacks an Inventive Concept

The '332 Patent also does not recite something "inventive" that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-22 (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72, 78-79 (2012)). Claim 1 invokes "already-available" conventional computer components to carry out the abstract steps without adding any specific improvement to a computer. *SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1170 (Fed. Cir. 2018). As discussed in Section I.A., the specification admits the claims may be executed on conventional computer hardware. *Universal Secure Registry LLC v. Apple Inc.,* 469 F. Supp. 3d 231, 237 (D. Del. 2020), *aff'd*, 10 F.4th 1342 (Fed. Cir. 2021) (the patent "fail[ed] step two" when the specification "itself acknowledge[d] [that] all of the steps to the claimed process are accomplished by implementing well-known methods using conventional computer components."). The specification further admits, "[t]raditional techniques" have been used to allow "DB-based analytics engines" access to databases in enterprise systems to perform analyses.

5

'332 Pat. at 1:25-29. The only purported difference here is that the claims recite allowing access by sending the organization of data stored in the enterprise system in an "interoperable format" to a cloud service that reformats the documented organization for use by an analytics engine. *Id.* at 5:18-24; Cl. 1. But the claim provides no details on *how* the organization is structured or created in either the "interoperable format" by the enterprise system or the "second format" by the cloud service. "Without an explanation of the 'mechanism' for 'how the result is accomplished,' th[e] purported feature[s] of the invention cannot supply an inventive concept." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331-32 (Fed. Cir. 2017) (internal citation omitted). The claim thus lacks any details beyond the abstract idea itself—enabling access to data by sharing a document describing the organization of the stored data in a standardized format —but this abstract idea "cannot supply the inventive concept, no matter how groundbreaking the advance." *Trading Techs. Int'l, Inc. v. IBG LLC,* 921 F.3d 1378, 1385 (Fed. Cir. 2019) (citation omitted). The Counterclaims provide no allegations to the contrary.

## II.    THE '259 PATENT IS INVALID UNDER 35 U.S.C. § 101

The '259 Patent, entitled "Look-Ahead Staging For Time-Travel Reconstruction," and issued on August 16, 2022. The '259 Patent specification explains that a "package (also referred to as a transaction) is often used to transfer data from a source system to a target system," where the "package can represent a set of changes." *Id.* at 1:6-8. The package may need to be "reconstructed" if a "problem occurs anywhere between the source and the target" (*i.e.*, along the data pipeline). *Id.* at 1:9-12. The '259 Patent purports to address this need for reconstruction by storing and transmitting the package, receiving a commit notification from the target system, and then removing the package from storage. *Id.* at 1:66-2:8.

Asserted claim 1 of the '259 Patent, recites these steps to transfer data to the target system:

1. A computer implemented method for enabling reconstruction of a package processed through a data pipeline, comprising:

receiving, by at least one processor, the package from a source system for processing through the data pipeline, wherein the package comprises a set of changes to be committed to a target system;

storing, by the at least one processor, the package in a persistent storage together with a respective package status;

transmitting, by the at least one processor, the package to the data pipeline in response to the storing;

receiving, by the at least one processor, a commit notification for the package from the target system in response to the transmitting;

and removing, by the at least one processor, the package from the persistent storage in response to receiving the commit notification for the package.

### A.    The '259 Patent is Directed to an Abstract Idea

When viewed as a whole, the asserted claim of the '259 Patent is directed towards the abstract idea of transferring data by storing and sending data from a source to a target and removing the data from storage in response to confirmation from the target destination. Claim 1 recites a method where a "processor" (1) receives a "package" of "changes" from the "source system," (2) stores the package in a "persistent storage" before "transmitting" it to the "target system," and (3) receives a "commit notification" from the target to then remove the package from "persistent storage." The claim is not directed to any "specific asserted improvement in computer capabilities" (*BSG Tech LLC*, 899 F.3d at 1286), but rather uses generic computer components including a "system," "persistent storage," and a "processor," to perform basic data operations—"providing," "receiving," "storing," "removing" and "transmitting" data. This "generic computer implementation, using routine, conventional activities, of the abstract idea, is [] insufficient to transform the patent-ineligible abstract idea into patent-eligible subject matter." *Tranxition, Inc.*, 664 F. App'x at 972 (internal quotations and citations omitted).

Here too, the Federal Circuit has routinely found patent claims abstract that use basic data operations to transfer data. For example, as discussed for the '332 Patent (*see* Section I.A.), the Federal Circuit in *Personal Web Technologies*, found claims directed to sending "content-based identifier[s]" from one computer to another for "controlling access to data, retrieving data, or marking data for deletion" performed "an abstract data-management function." *PersonalWeb Techs. LLC*, 8 F.4th at 1317. Additionally, in *WhitServe LLC v. Dropbox, Inc.*, the Federal Circuit found claims patent ineligible that were directed towards "a system for onsite backup for internet-

based data processing systems" specifically, "sending, over the Internet, a request for a copy of data records, receiving the request, and transmitting a copy of the requested data." 854 F. App'x at 368, 371. The court found that the claimed method was directed towards "maintaining data records, in particular, backing up data records" and that such steps have been "a fundamental business practice that 'existed well before the advent of computers and the Internet.'" *Id.* (citing *Intell. Ventures I LLC*, 850 F.3d at 1327)*; see also MyMail, Ltd. v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364, at *6 (Fed. Cir. Aug. 19, 2021) (finding claims patent ineligible that recited updating a toolbar on a user device by the user device first sending database information to a server, the server determining whether an update is needed and if so, sending an update, the user device then receiving and updating the toolbar). SAP's claims similarly recite basic data operations of "providing," "receiving," "storing," "removing" and "transmitting" data between two systems.

Here too, SAP makes conclusory allegations as to the claim being "novel" and providing a "technological improvement." Countercl. ¶ 37. SAP contends the '259 Patent "provide[s] a technological improvement through particular architecture and sequence-specific actions that improve reliability and efficiency when processing a package through a data pipeline between systems, including by reducing the amount of time that software on the source system locks a region of persistent storage and frees the source system from having to lock data being processed." *Id.* Initially, the asserted claim makes no mention about "lock[ing]" or "free[ing]" of this storage. *Hawk Tech. Sys., LLC v. Castle Retail, LLC,* 60 F.4th 1349, 1357 (Fed. Cir. 2023) ("The analysis at step one must focus on the claim language.") (internal quotations omitted). The claim merely refers to the use of "persistent storage" in its "ordinary capacity" to store a set of changes and remove them once they are confirmed to have been committed to the target system. *SynKloud Techs., LLC v. HP Inc.,* 490 F. Supp. 3d 806, 818 (D. Del. 2020) (using different types of storage in their "ordinary roles" is not an improvement). And even if the "goal" is to free a "lock[ed]" storage "region," '259 claim 1 does not describe a "mechanism" to do so. *Orostream LLC*, 2019 WL 4729538, at *1.

Further, the specification admits the "persistent storage" can be "*any* storage device that

retains data after power to the storage device is shut off," including the well-known "hard disk drive, solid-state drive, database, filesystem, object-store, or various other types of storage device as would be appreciated by a person of ordinary skill in the art." '259 Pat. at 2:43-48 (emphasis added). Nor could the mere use of this persistent storage to store data, its conventional use, be an improvement in computer technology. *SynKloud Techs.,* 490 F. Supp. 3d at 818; *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (finding claims that "recite only conventional computer components" not "sufficiently tie[d]" to a "particular scalable network architecture" that "itself leads to an improvement in the functioning of the system.").

The Counterclaims further allege that the '259 Patent contains the "particular architecture and sequence-specific actions that improve reliability and efficiency when processing a package through a data pipeline between systems." Countercl. ¶ 37. But the ***claim*** only "rel[ies] on the ordinary storage and transmission capabilities of [conventional] computers within a network," to transmit data between two systems. *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 372 (Fed. Cir. 2021). Indeed, the specification makes clear that the target and source systems can be "a desktop computer, server, virtual machine, container, laptop, tablet, smartphone, or other device as would be appreciated by a person of ordinary skill in the art." ('259 Pat. 2:30-33, 2:65-3:1) and the communication path between the devices can "include any combination of LANs, WANs, the Internet, etc" (*id.* at 11:12-17). And as a matter of law, using conventional computer components to perform the abstract ideas of storing and removing data "to increase the speed or efficiency of the process," as SAP alleges (Countercl. ¶ 37), "does not confer patent eligibility on an otherwise abstract idea." *Intell. Ventures I LLC,* 792 F.3d at 1370.

### B.    The '259 Patent Lacks an Inventive Concept

The claim elements in the '259 Patent, individually or as an ordered combination, do not provide an inventive concept because the claim recites the logical, abstract process of a source preparing a set of changes, sending them to a target destination, confirming receipt and then removing the data from the source. The claim provides nothing more than the abstract idea itself, which "cannot supply the inventive concept, no matter how groundbreaking the advance." *Trading*

*Techs. Int'l, Inc.,* 921 F.3d at 1385 (citation omitted). Like the other Asserted Patents, '259 Patent claim 1 invokes generic computer components the specification admits are "conventional" (*see* Section II.A.). And here too, the '259 Patent does not have any explanation of the "mechanism" for '***how*** the result is accomplished," precluding any finding of an "inventive concept." *Internet Patents Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1348 (Fed. Cir. 2015) (emphasis added). Rather, the claim uses basic data operations of "providing," "receiving," "storing," "removing" and "transmitting" data, but does not describe how these functions are performed, much less how they are performed in any non-conventional way.

## III.    THE '947 PATENT IS INVALID UNDER 35 U.S.C. § 101

The '947 Patent, entitled, "Landscape Transformation Replication Server," was issued on August 26, 2014. As the specification explains, "[b]usiness system applications may be coupled to one or more database systems to store data used in connection with the business." '947 Pat. at 1:13-15. The '947 Patent claims concern "copying data from a source system [e.g., the business system application] to a target system [e.g., the database] and then recording changes occurring to the data at the source system and posting those changes to the target system." *Id.* at 2:20-23. The business system application can be configured to send data to the target database "to keep track of employees in a corporation, each record might include attributes such as for example a first name, last name, home address, and telephone number." *Id.* at 1:24-27. The specification is silent as to any technical problem the '947 Patent seeks to address.

SAP asserts only claims 8 and 9, which recite data replication between systems by triggering the recording of a change in data on a source system, and sending the changes to a target:

> 8. A method comprising:
>
> providing, by a source system, an initial load of a data item from the source system to a target system, wherein the data item is associated with a database trigger maintained at the source system;
>
> recording, by the source system, a change in a log at the source system, when a change to the data item at the source system causes the trigger to prompt the recording;
>
> extracting, by the source system, the change from the log to enable at least a confirmation

of an accuracy of the change;

receiving, at the source system, a call from a replication server; and

providing, in response to the received call, the extracted change to the replication server configured to write the change to the target system.

9. The method of claim 8,

wherein the database trigger comprises a database object linked to a table including the data item.

### A.    <u>The '947 Patent is Directed to an Abstract Idea</u>

When viewed as a whole, asserted '947 claims 8 and 9 are also directed towards the abstract idea of sending data from a source to a target destination, without any "specific asserted improvement in computer capabilities." *BSG Tech LLC,* 899 F.3d at 1286. The '947 Patent replicates data by performing the abstract steps of (1) triggering a source system to log a change in data, (2) extracting the log to confirm the change, and (3) then updating the target destination with the change. Nothing in dependent claim 9 alters the abstract nature of the claims, it merely adds an insignificant post-solution detail to use a "database object" to trigger the logging. *Bilski v. Kappos,* 561 U.S. 593, 611-12 (2010) (internal quotations omitted*)* (abstract ideas "cannot be circumvented" by adding "insignificant" or "token postsolution components."). The patent explains this "database object" is just a function that "react[s]" to operations performed on the data including "insert, update, delete, and the like." '947 Pat. at 3:55-57; 5:19-22; Table 1. Using computers merely as a tool to programmatically implement a "react[ion]" (*id.*) to log a data change does not alter the claims' "character as a whole." *ChargePoint, Inc.,* 920 F.3d at 765.

Here too, the '947 Patent does not recite any specific improvement in computer capabilities either. *BSG Tech LLC,* 899 F.3d at 1286. Indeed, the specification does not try to even identify a technical problem it seeks to address. Nor could it. The claim recites a generic "system" performing the basic data operations of "providing," "receiving," "recording," and "extracting" data. But as discussed above, the Federal Circuit has routinely found claims abstract that implement these basic operations for "transmitting, saving, and storing" data. *WhitServe LLC,* 854 F. App'x at 368, 371; *PersonalWeb Techs. LLC,* 8 F.4th at 1317; *MyMail, Ltd.,* 2021 WL 3671364,

at *6. Nor does the claimed "extraction" step change the abstract nature of the claims. Here too, the Federal Circuit in *Glasswall Sols. Ltd. v. Clearswift Ltd*, has found the claim step of "extracting" "conforming" data from an "electronic file" to be a "generic computer function," and the asserted claims as a whole to be directed to the "conventional manipulation of information by a computer," and thus abstract. 754 F. App'x 996, 998 (Fed. Cir. 2018).

As with the other patents, the Counterclaims' conclusory allegations that the claims are "novel" and provide a "specific technological improvement" (Countercl. ¶¶ 29-30) are irrelevant as a matter of law. *Boom! Payments, Inc.,* 2019 WL 6605314, at *1. SAP alleges because the "method is a specific combination of particular actions," and "uses specific objects including a database trigger object linked to the source system data table, a specific changelog table, and a replication server," it claims a "technological improvement." Countercl. ¶ 30. To the extent that these alleged "specific objects" are actually included in the claims, they are again generic computer components, and the use of them to implement a series of abstract steps—triggering a source system to log a data change, extracting the log, and updating a target destination with the change— does not render the focus of the claims patent eligible. *Tranxition, Inc.*, 664 F. App'x at 972.

Further, the alleged "specific changelog table" SAP refers to (Countercl. ¶ 30) is not even in the claims; instead, the claims recite the abstract step of logging in purely functional terms. *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.,* 50 F.4th 1371, 1378 (Fed. Cir. 2022) (invalidating a patent "written in result-based functional language that does not sufficiently describe how to achieve these results in a non-abstract way") (quoting *Two-Way Media*, 874 F.3d at 1337). Nor does the use of (1) a generic "database object," with no technical details on its structure or form, to log a change, and (2) a generic "replication server," also devoid of any non-conventional technical details, to update a target with the change, detract from claims' abstract nature as a whole. Even if the use of these generic components makes data replication "faster" as SAP alleges (Countercl. ¶ 29), this is insufficient to make the claims patent eligible. *Intell. Ventures I LLC*, 792 F.3d at 1370.

### B.    The '947 Patent Lacks an Inventive Concept

Like the other Asserted Patents, the '947 Patent's specification admits the abstract steps

are performed with generic and conventional computer components capable of transmitting data between systems. '947 Pat. at 8:4-15 (recognizing there are "various implementation of the subject matter" that may be realized on "computer hardware, firmware, software, and/or combinations thereof" including through "general purpose" processors that can execute computer programs to transmit data); *id.* at 8:48-52 ("The components of the system may be interconnected by any form or medium of digital data communication (e.g., a communication network."). "[R]elying on the ordinary storage and transmission capabilities of [conventional] computers within a network," to transmit data between two systems, cannot provide the inventive concept. *WhitServe LLC,* 854 F. App'x at 372. And the Counterclaims do not allege anything beyond the claim language itself that could. (Countercl. ¶¶ 29-30). Again, there can be no inventive concept when the claims fail to provide any explanation of how the basic data operations are performed, much less how they are performed in a non-conventional way. *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.,* 657 F. App'x 991, 993 (Fed. Cir. 2016). Without anything more, the claims are only directed to the abstract idea of sending data from a source to a target destination, which, as a matter of law, "cannot supply the inventive concept." *Trading Techs.,* 921 F.3d at 1385 (citation omitted).

## IV.    SAP'S INDIRECT INFRINGEMENT OR AT A MINIMUM, THE PRE-SUIT INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

### A.    SAP Does Not Plead the Elements of Contributory Infringement

SAP's allegations of contributory infringement for each Asserted Patent amount to conclusory statements which repeat the legal elements of the claim. Countercl. ¶¶ 45, 81, 117. As the Federal Circuit held in *Artrip v. Ball Corp.*, such conclusory allegations are not enough. 735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [the defendant] was aware of the patents or facts to suggest that the [accused product] it supplied had no substantial noninfringing use," where complaint alleged only that the accused product was "not a 'staple article' and [was] not suitable for substantial non-infringing use"). SAP does not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing

uses[.]" *Id.* (citation omitted). Nor do the Counterclaims identify any "component" used for infringement, much less any plausible, factual allegations of substantial non-infringing uses or a "component" that is a material part of the invention.

### B.    SAP Does Not Plead the Elements of Induced Infringement

SAP's allegations of induced infringement for each Asserted Patent do not plausibly allege (1) Celonis "knew" its actions "would induce actual infringement," or that (2) Celonis had the "specific intent to induce infringement." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015). Allegations of specific intent require factual evidence of "culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Guzik Tech. Enters., Inc. v. W. Digital Corp.*, No. 11-CV-03786-PSG, 2012 WL 1669355, at *3 (N.D. Cal. May 11, 2012) citing *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006). The Counterclaims allege "encouragement" by Celonis by making passing references to Celonis's materials by listing URLs and providing screenshots of "summary diagrams" (Countercl. ¶¶ 50-51, 72, 86, 108, 135), but these references, devoid of any specific instructions to perform the asserted claims, do not provide specific allegations of the requisite "culpable conduct" to plead induced infringement. *Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) (dismissing induced infringement claim where the complaint referred to defendant's instructional materials but "[i]n no way . . . detail[ed] *how* an end user would infringe following [those] instructions").

### C.    SAP Does Not Plead Pre-Suit Knowledge

At a minimum, SAP's pre-suit allegations of indirect infringement should be dismissed. Induced and contributory infringement require "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). "To satisfy the knowledge requirement, either actual knowledge or willful blindness is required." *P2i Ltd. v. Favored Tech USA Corp.,* No. 23-CV-01690-AMO, 2024 WL 4294652, at *6 (N.D. Cal. Sept. 24, 2024). SAP's sole allegation of knowledge of the patents is a conclusory statement that Celonis

"has known of the ['947/'332/'259] Patent[s] at least since the time of service of the present Countercl. ¶¶ 44, 80, 116. SAP thus has not plausibly pled actual pre-suit knowledge or that Celonis was willfully blind to the Asserted Patent prior to the suit. This Court has repeatedly rejected such allegations of knowledge as insufficient to plead pre-suit indirect infringement. *Omnitracs, LLC v. Motive Techs., Inc.*, No. 23-CV-05261-RFL, 2024 WL 2886047, at *3 (N.D. Cal. Feb. 12, 2024) (plaintiff failed to state a claim for pre-suit indirect infringement because it did not plausibly allege pre-suit knowledge); *P2i Ltd.,* 2024 WL 4294652, at *6.

## V.    SAP'S WILLFUL INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

As with pre-suit indirect infringement, SAP must plausibly plead that Celonis had pre-suit knowledge of the Asserted Patents for SAP's claim of willful infringement to survive a motion to dismiss. Because it does not do so, SAP's willful infringement claim should be dismissed. *Dental Monitoring SAS v. Align Tech., Inc.*, No. C 22-07335 WHA, 2023 WL 4297570, at *6 (N.D. Cal. June 30, 2023) ("[T]he filing of a complaint cannot, standing alone, serve as notice for purposes of willful and indirect infringement.").

## VI.   SAP'S DIRECT INFRINGEMENT ALLEGATIONS AGAINST THE '947 PATENT SHOULD BE DISMISSED

Asserted claims 8 and 9 of the '947 Patent recite a "source system" that performs the claimed steps: "providing, *by a source system*, an initial load of a data item from the source system to a target system," "recording, *by the source system*, a change in a log at the source system, " "extracting, *by the source system*, the change from the log to enable at least a confirmation of an accuracy of the change," "receiving, *at the source system*, a call from a replication server," and "providing, in response to the received call, the extracted change to the replication server." SAP alleges that its *own* databases (SAP ECC and SAP S/4HANA) are the alleged "source system" that actually performs these steps. *E.g.*, Countercl. ¶¶ 48-49. Thus, Celonis cannot infringe as a matter of law. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1357 (Fed. Cir. 2007) (finding defendant could not infringe as a matter of law where the patent holder performed some steps in the asserted patent's method claim).

Dated: January 14, 2026

Respectfully submitted,

By: */s/ David Perlson*

Celine Crowson (*pro hac vice*)
Jennifer Fleury (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Lauren B. Cury (*pro hac vice*)
Christopher Fitzpatrick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
celine.crowson@hoganlovells.com
jennifer.fleury@hoganlovells.com
justin.bernick@hoganlovells.com
anna.shaw@hoganlovells.com
lauren.cury@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

Michael M. Maddigan (Bar No. 163450)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
michael.maddigan@hoganlovells.com

David Perlson (Bar No. 209502)
Gurtej Singh (Bar No. 286547)
Christine Pinnkathok (Bar No. 353430)
Isabella Bosetti (Bar No. 358767)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Phone: (415) 374-2300
david.perlson@hoganlovells.com
tej.singh@hoganlovells.com
christine.pinnkathok@hoganlovells.com
isabella.bosetti@hoganlovels.com

Christopher C. Wheeler (Bar No. 224872)
Alexis J. Loeb (Bar No. 269895)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
cwheeler@fbm.com
aloeb@fbm.com

*Attorneys for Plaintiffs Celonis SE and Celonis, Inc.*