Michael M. Maddigan (Bar No. 163450)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.maddigan@hoganlovells.com

Jennifer Fleury (*pro hac vice)*
Justin W. Bernick (*pro hac vice)*
Anna Kurian Shaw (*pro hac vice*)
Lauren B. Cury (*pro hac vice*)
Celine J. Crowson (*pro hac vice*)
Christopher Fitzpatrick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
jennifer.fleury@hoganlovells.com
justin.bernick@hoganlovells.com
anna.shaw@hoganlovells.com
lauren.cury@hoganlovells.com
celine.crowson@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

Russell Tan (*pro hac vice*)
HOGAN LOVELLS US LLP
609 Main Street
Suite 4200
Houston, TX 77001
Telephone: (713) 632-1437
russell.tan@hoganlovells.com

Sarah Keller (*pro hac vice*)
HOGAN LOVELLS US LLP
8350 Broad Street
17th Floor
Tysons, VA 22102
Telephone: (703) 374-2300
sarah.w.keller@hoganlovells.com

Christopher C. Wheeler (Bar No. 224872)
Alexis J. Loeb (Bar No. 269895)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
cwheeler@fbm.com
aloeb@fbm.com

*Attorneys for Plaintiffs Celonis SE and
Celonis, Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CELONIS SE and Celonis, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>SAP SE and SAP America, Inc.<br>Defendants. | **Case No.: 3:25-CV-02519-VC-SK**<br><br>**PLAINTIFFS CELONIS SE'S AND CELONIS, INC.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND EXTEND CASE SCHEDULE**<br><br>**Date: June 25, 2026**<br>**Time: 10:00 AM**<br>**Judge: Honorable Vince Chhabria**<br>**Courtroom: 4, 17th Floor** |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

I.     Good Cause Exists for Amendment of the Operative Complaint and Extension of the Case Schedule Under Fed. R. Civ. P. 16(b) Because Celonis Acted Diligently Upon Discovering the New Evidence Forming the Basis of its Trade Secret Claims................... 2

II.    Granting Leave to File the Second Amended Complaint Does Not Unduly Prejudice SAP ................................................................................................................... 8

CONCLUSION ............................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baird v. BlackRock Institutional Trust Co.*,
No. 17-cv-01892, 2018 WL 4028224 (N.D. Cal. Aug. 23, 2018) ............................................. 7

*Beluca Ventures LLC v. Einride Aktiebolag*,
660 F. Supp. 3d 898 (N.D. Cal. 2023) ...................................................................................... 3

*Bickerstaff v. Amazon.com Services LLC*,
No. 23-cv-2075-RSH-JLB, 2024 WL 4994344 (S.D. Cal. Dec. 5, 2024) ................................ 4

*Chan v. ArcSoft, Inc.*,
No. 19-cv-05836-JSW, 2022 WL 22863221 (N.D. Cal. Nov. 23, 2022) .................................. 3

*Copart, Inc. v. Sparta Consulting, Inc.*,
No. 2:14-cv-00046-KJM-CKD, 2016 WL 3126108 (E.D. Cal. June 1, 2016) ..................... 5, 6

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
No. 05-0583, 2006 WL 3733815 (E.D. Cal. Dec. 15, 2006) ................................................. 3, 7

*Genentech, Inc. v. Abbott Lab'ys*,
127 F.R.D. 529 (N.D. Cal. 1989) ............................................................................................ 10

*Impossible Foods Inc. v. Impossible LLC*,
No. 5:21-cv-02419-BLF, 2024 WL 6883868 (N.D. Cal. Sep. 17, 2024) ................................. 7

*In Re: Intuitive Surgical Securities Litigation*,
No. 5:13-cv-01920-EJD, 2017 WL 363269, at *2 (N.D.Cal., Jan. 25, 2017) .......................... 6

*Johns v. AutoNation USA Corp.*,
246 F.R.D. 608 (D. Ariz. 2006) ............................................................................................... 6

*M.H. v. Cnty. of Alameda*,
No. 11-2868, 2012 WL 5835732 (N.D. Cal. Nov. 16, 2012) ................................................... 3

*Schwerdt v. Int'l Fid. Ins. Co.*,
28 F. App'x 715 (9th Cir. 2002) ............................................................................................... 5

*Story v. Midland Funding LLC*,
No. 3:15-cv-0194-AC, 2016 WL 5868077 (D. Or. Oct. 7, 2016) ............................................ 4

*SunPower Corp. v. SolarCity Corp.*,
No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ................................. 8

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
No. 16-cv-00119-HSG, 2019 WL 95927 (N.D. Cal. Jan. 3, 2019) ........................................ 10

ii

*United States v. Webb*,
   655 F.2d 977 (9th Cir. 1981)..................................................................................................... 10

*Upton v. Corizon Health Care Inc.*,
   No. CV-17-01052-PHX-JAT, 2019 WL 581274 (D. Ariz. Feb. 12, 2019) .............................. 6

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................................. 8

Fed. R. Civ. P. 16(b) ............................................................................................................... 1, 2, 4

Fed. R. Civ. P. 21 ........................................................................................................................... 8

PLAINTIFFS CELONIS SE'S AND CELONIS, INC.'S REPLY ISO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND EXTEND CASE SCHEDULE, Case No.: 3:25-CV-02519-VC-SK

**INTRODUCTION**

SAP's Opposition (Dkt. 205, "**Opposition**" or "**Opp.**") to Celonis' Motion for Leave to File its Second Amended Complaint ("**SAC**") and Extend the Case Schedule (Dkt. 188, the "**Motion to Amend**") rests primarily on SAP's attempt to draw a false equivalence between SAP's bid to add patent counterclaims,[1] and Celonis' request to add claims for trade secret misappropriation. That analogy fails in three critical ways. *First*, SAP's patent counterclaims were too far attenuated from the subject matter of this case. Celonis' trade secret misappropriation claims, by contrast, arise out of documents produced in this very action, serve as additional bases for at least two of the claims already proceeding in discovery before this Court, and themselves form a facet of the very anticompetitive conduct at the heart of this dispute. *Second*, SAP estimated that the addition of its patent counterclaims would extend the case schedule by over fifteen months, necessitating claim disclosures, infringement contentions, claim construction, invalidity contentions, and other procedurally distinct mechanisms. Celonis, by contrast, seeks only a 12-week extension—far from the "sprawling sideshow" threatened by SAP. *Third*, SAP was already litigating patent claims against Celonis in two other U.S. fora at the time it sought to also append patent counterclaims here. The Parties are not, by contrast, litigating trade secret claims anywhere else in the United States, and this Court has already rejected SAP's comity argument with respect to the German proceeding SAP references. For these reasons, SAP's false analogy – which also forms the sole basis for its prejudice argument – should be rejected.

SAP's Opposition otherwise depends on a wholesale misread of Rule 16. SAP alleges that Celonis was required to identify and plead trade-secret claims within two weeks of SAP's December 31 production because four (4) documents later cited in the SAC were somewhere in that production. Rule 16 imposes no such requirement. The relevant question is when Celonis learned enough facts to plead the claims responsibly. Celonis did not receive the full set of

---

[1] Before the Court could effect the transfer of SAP's counterclaims to the District of Delaware per its granting of Celonis' Motion to Sever, *see* Dkt. 170, SAP withdrew those counterclaims from this Court's jurisdiction and refiled them in the Eastern District of Texas. *See* Dkt. 175.

PLAINTIFFS CELONIS SE'S AND CELONIS, INC.'S REPLY **ISO** MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND EXTEND CASE SCHEDULE, Case No.: 3:25-CV-02519-VC-SK

documents supporting those claims until March 2026; did not identify those documents in the course of reviewing SAP's massive productions until April 20, 2026; notified SAP six days later; and filed this motion less than one week after that.  That is diligence, not delay.

**Timeline of Document Production, Identification and Preparation of SAC**



SAP's argument on diligence is especially weak because the documents at issue were not a known set of documents from a known actor on a known trade secret theory.  They were scattered among tens of thousands of documents under review by January 14, and then among more than 1.5 million documents produced by SAP by April.

Celonis' position is consistent with the law and with this Court's own prior order, where the Court recognized that discovery might uncover facts supporting amendment and expressly stated that Celonis could seek leave to amend if discovery revealed such facts.  Dkt. 100 at 5.  Celonis' Motion to Amend based on such newly discovered facts should be granted.

**I.      Good Cause Exists for Amendment of the Operative Complaint and Extension of the Case Schedule Under Fed. R. Civ. P. 16(b) Because Celonis Acted Diligently Upon Discovering the New Evidence Forming the Basis of its Trade Secret Claims**

In assessing good cause, courts generally consider the diligence of the party seeking the

modification. *M.H. v. Cnty. of Alameda*, No. 11-2868, 2012 WL 5835732, at *2 (N.D. Cal. Nov. 16, 2012). Allowing parties to amend based on information obtained through discovery is common and well established. *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. 05-0583, 2006 WL 3733815, at *3–5 (E.D. Cal. Dec. 15, 2006). Diligence is generally determined by examining the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *Chan v. ArcSoft, Inc.*, No. 19-cv-05836-JSW, 2022 WL 22863221, at *1 (N.D. Cal. Nov. 23, 2022). <u>Here, that time was less than two weeks.</u> Declaration of Lauren Cury in Support of Reply in Support of Motion to Amend ("Cury Decl.") ¶ 7.

SAP's Opposition attempts to distract from this objectively sufficient diligence by raising a series of strawman arguments. First, SAP argues that Celonis was aware of the basis for its trade secret misappropriation claims prior to the start of discovery. Opp. 3. To do so, SAP points to certain pre-litigation letters sent by Celonis to SAP, in which Celonis raised suspicions that SAP had "recruit[ed] key Celonis employees involved in developing the most novel and groundbreaking technology for the sole purpose of obtaining… trade secrets." Dkt. 46-4. SAP conflates general suspicion with claim-specific knowledge sufficient to meet the pleading standard. And that suspected information—technical details regarding engineering and product development, that Celonis suspected was being used to "create and distribute materials that [we]re... copies of Celonis' proprietary materials," Dkt. 46-5, is distinct from the customer and business intelligence trade secrets at issue here, which include ███████████████████████ ███████████████████████ ███████ Celonis could not have raised trade secret claims based on the misappropriation of these trade secrets without the details provided in the documents produced by SAP during discovery in this case. *See Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 907 (N.D. Cal. 2023) ("To prove ownership of a trade secret, plaintiffs must identify the trade secrets and carry the burden of showing they exist. . . . Although a plaintiff need not 'spell out the details of the trade secret,' . . . a plaintiff 'should describe the subject matter of the trade secret with ***sufficient particularity*** to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'") (emphasis added) (citation modified).

3

Next, SAP contends that Celonis lacked diligence in filing its Motion to Amend because four (4) of the documents cited in the SAC were produced by SAP on December 31, 2025. Contrary to SAP's assertions, however, diligence under Rule 16(b) does not require unreasonably quick or immediate action by a party seeking to amend, nor does diligence require a party to move to amend before that party has sufficient information to support its new claim. *Bickerstaff v. Amazon.com Services LLC*, No. 23-cv-2075-RSH-JLB, 2024 WL 4994344, at *2 (S.D. Cal. Dec. 5, 2024) (stating that "the diligence inquiry asks whether the plaintiff has sought to interpose its proposed amendment within a reasonably prompt time *after learning of the basis for amendment*" and finding that plaintiff acted diligently after starting to receive some of the information underlying the new claims in July 2024 but not moving to amend until October 2024) (emphasis added); *Story v. Midland Funding LLC*, No. 3:15-cv-0194-AC, 2016 WL 5868077 at *3-4, (D. Or. Oct. 7, 2016) (finding good cause where plaintiff filed for leave to amend three months after *learning* the new information underlying additional claims); *Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-cv-00046-KJM-CKD, 2016 WL 3126108, at *5 (E.D. Cal. June 1, 2016) (finding plaintiff "provided a satisfactory explanation for moving to amend at this time, namely that it waited until it had sufficient evidence to support amendment" where it filed for leave to amend 120 days after receiving the supporting documents).

Here, although Celonis began receiving some of the documents which form the basis of Celonis' trade secret misappropriation claims at the end of December 2025 *in response to discovery requests issued on Celonis' existing claims*, these documents were buried among tens of thousands of other documents produced by SAP by the January 14 deadline to amend.[2]  Cury Decl. ¶ 3.

---

[2] While SAP touts that the particular December 31 production which included four (4) of the documents at issue contained "just 6,383 documents," Opp. 6,  SAP fails to disclose that by January 14, 2026, SAP had produced 56,095 documents totaling 150,301 pages that Celonis was in the process of reviewing, followed closely by over 1.7 million additional documents by the time of Celonis' filing. Cury Decl. ¶¶ 3-4.  This was far from the "manageable number to promptly review" SAP would have this Court believe.  Opp. 6.

Moreover, SAP did not produce two of the key documents underlying these claims until March 2026 – by which point in time SAP had produced over *1.3 million* documents requiring Celonis' review and analysis. Dkt. 188-1, ¶ 4; Cury Decl. ¶¶ 4-5. The fact that Celonis did not actually become aware of these six (6) particular documents until April 20, 2026 (Cury Decl. ¶ 6) was entirely reasonable given the extensive review Celonis was required to undertake. In moving to amend approximately six (6) weeks after obtaining all the relevant documents to support its trade secret misappropriation, and less than two (2) weeks after becoming aware of such documents, Celonis has acted with reasonable diligence. *See Copart, Inc.*, 2016 WL 3126108, at \*4 ("Though Sparta produced the key documents in November 2015, it produced a total of 60,000 documents. In the approximately 120 days between the production of the documents and the filing of the pending motion, Copart would have had to review roughly 500 documents per day to read through all 60,000 documents. While Copart may not have needed to review all 60,000 documents before it realized an amendment was necessary, a large number of documents nevertheless still needed to be reviewed in order for Copart to gather sufficient facts to support its new allegations.").

SAP frames this as a "four-month delay," Opp. 9, conveniently counting from the time it first produced the very first of the relevant documents, arguing that such period exceeds what courts have found to constitute diligence. *Id*. But even the case law SAP cites does not support this position. Unlike in the present case, the plaintiff in *Schwerdt v. Int'l Fid. Ins. Co*., learned the facts that supported his additional claims of fraud and negligence during a witness deposition—they were not buried amongst tens of thousands of documents. And after learning these facts, the plaintiff waited *one month* to notify defendant of his intention to amend the complaint, waiting an *additional seven weeks* following that notice to ultimately file his motion. *Schwerdt v. Int'l Fid. Ins. Co*., 28 F. App'x 715, 719 (9th Cir. 2002). Here, Celonis did not learn the information forming the basis of its trade secret misappropriation claims through a singular event like a deposition or interrogatory. Indeed, it did not begin to encounter the documents at issue until April 20, 2026, in the course of reviewing the masses of documents produced by SAP by that time. Cury Decl. ¶ 6. Upon identifying those documents, Celonis notified SAP of its intention to file its Motion to Amend a mere six (6) days later, filing that motion less than one week later after notifying SAP. Dkt. 188-

1, ¶¶ 6, 8, 10; Cury Decl. ¶ 7.  Courts have found reasonable diligence under similar circumstances with lengthier time periods between the discovery of the new information and a motion for leave to amend.  *See Copart, Inc.*, 2016 WL 3126108, at *4.

*Upton v. Corizon Health Care Inc.,* which SAP cites for the assertion that a four-month delay between learning facts and seeking amendment was not diligent, and *Johns v. AutoNation USA Corp.*, which SAP cites for the proposition that a "four-month delay "shows Defendants were not diligent" are likewise distinguishable from the present circumstances.  In *Upton v. Corizon Health Care Inc.,* the claims the *pro se* plaintiff sought to add were premised on actions which took place and were known to the plaintiff (i.e. denial of appropriate medical care) prior to the deadline for amendment, yet the plaintiff waited *464 days* after the deadline to move to amend his complaint.  No. CV-17-01502-PHX-JAT, 2019 WL 581274, at *4 (D. Ariz. Feb. 12, 2019).  Here, Celonis was not aware of the facts underlying its trade secret misappropriation claims until well after the deadline for amendment had passed, and filed less than two weeks after learning those facts.  Dkt. 188-1, ¶ 7. And in *Johns*, the court found a lack of diligence where the defendants moved for leave to amend over eleven (11) months after the deadline, defendant's only justification for delay was the retention of new counsel, and defendants delayed four (4) months after retention of counsel before seeking leave to amend.  *Johns v. Autonation USA Corp.*, 246 F.R.D. 608, 610 (D. Ariz. 2006).  Here, Celonis' Motion to Amend is premised on revelation of new evidence during the discovery process, not a mere change in counsel, and is far more timely than the motions denied in either of SAP's inapposite cases.

SAP's attempts to distinguish Celonis' supporting case law are similarly unavailing.  As in the present case, in *In re: Intuitive Surgical Sec. Litig.*, the allegations plaintiffs sought to add to the complaint were revealed through an extensive discovery process, including nearly 70,000 pages of documents and 14 separate fact depositions, as well as multiple rounds of interrogatories and requests for admission and five separate discovery disputes.  No. 5:13-cv-01920-EJD, 2017 WL 363269, at *2 (N.D. Cal., Jan. 25, 2017).  The plaintiffs then filed their motion within weeks of the final document production and final deposition.  *Id*.  Here, the facts underlying Celonis' trade secret misappropriation claims were also gleaned through (an even more) extensive discovery process,

and Celonis filed its Motion to Amend within approximately six weeks of receiving the full set of documents on which it relies, and less than two weeks after identifying those documents through its review. Cury Decl. ¶¶ 5-7. Indeed, Celonis filed its Motion to Amend before depositions – or document discovery – had even concluded. Dec. 29, 2025 Set Deadlines/Hearings re: Dkt. 145.

In *Impossible Foods Inc. v. Impossible LLC*, the plaintiff moved for leave to amend six weeks after receiving the relevant information – virtually the identical time which elapsed between SAP's March 13 production, and Celonis' filing. No. 5:21-cv-02419-BLF, 2024 WL 6883868, at *3–4 (N.D. Cal. Sep. 17, 2024). Like the plaintiff in *Impossibl*e, Celonis did not have all the key information to support its trade secret misappropriation claims until March 2026 when it obtained the last two documents cited in the SAC. Those two documents were particularly informative, as they show ██████████████████████████████████████████ ████████████████████████████████████████████████ *See* Dkt. 189-4, Exs. 5 and 6. Also like the plaintiff in *Impossible*, Celonis moved to add these claims about six weeks after obtaining these key pieces of information. *See* Cury Decl. ¶¶ 5, 7; *Impossible Foods Inc.*, 2024 WL 6883868, at *3 ("The Court concludes that Plaintiff has demonstrated diligence in seeking amendment of its Complaint. Until receiving Defendant's discovery responses, Plaintiff lacked certain information key to its allegations supporting the new claims."). Further, like in *Baird v. BlackRock Institutional Tr. Co*., , No. 17-cv-01892, 2018 WL 4028224, at *2 (N.D. Cal. Aug. 23, 2018), Celonis filed less than one month after *learning* the new information, which information Celonis did not actually encounter until April 20, 2026. Cury Decl. ¶ 6. And Celonis in fact filed its Motion to Amend faster than the plaintiff in *Baird*. While in *Baird*, a month elapsed between plaintiff's learning the information and filing, *Id*., Celonis filed its Motion to Amend less than two weeks after identifying the first of the documents at issue. This time period easily meets the diligence requirement. *See Fru-Con Const. Corp*., 2006 WL 3733815, at *4 (finding that the defendant "acted with reasonable diligence" in moving for leave to amend its counterclaim "roughly two months" after learning new facts at the deposition).

**II.     Granting Leave to File the Second Amended Complaint Does Not Unduly Prejudice SAP**

In arguing that granting Celonis' Motion to Amend would severely prejudice SAP, SAP's primary contention is that SAP would be prejudiced by the addition of Celonis' trade secret claims for the same reasons Celonis would have been prejudiced by the retention of SAP's patent infringement counterclaims, falsely equating the vastly different circumstances – and implications—of each.

SAP raised its patent infringement counterclaims based on knowledge SAP had well before receiving any discovery from Celonis, and which it in fact included in the parties' Joint Case Management Conference Statement and Discovery Plan filed on June 16, 2025, before discovery even commenced.  Dkt. 91.[3]  SAP's patent counterclaims were the subject of Celonis' Motion to Sever under Fed. R. Civ. P. 21, which the Court granted (Dkt. 170), finding that doing so would serve the ends of justice and enable efficient disposition of this litigation, including because SAP's patent counterclaims were, as the Court recognized, "a very different endeavor" than the claims otherwise before this Court.  Hr'g Tr. 21:10-22, Feb. 26, 2026.

By contrast, Celonis' intended trade secret misappropriation claims are yet another facet of the systematic anticompetitive business practices at the heart of this case—with SAP having misappropriated those trade secrets in furtherance – and as part—of that anticompetitive strategy. Celonis' trade secret misappropriation claims are also inextricably intertwined with and form additional bases for, Celonis' existing unfair competition and tortious interference claims,[4] as they

---

[3] SAP's Answer and Counterclaims were filed in November of 2025 and Celonis did not make its first document production until December 2025.

[4] SAP argues that CUTSA preempts UCL claims based on the same nucleus of facts as trade secret misappropriation, such that Celonis' UCL and CUTSA claims are mutually exclusive.  This is not accurate.  Not only is Celonis entitled to plead in the alternative under Fed. R. Civ. P. 8, but Celonis' UCL claim would only be superseded to the extent that it was not based on any other wrongdoing by SAP besides the alleged acts of trade secret misappropriation.  *See SunPower Corp. v. SolarCity*

raise another impermissible means by which SAP unfairly competed with Celonis and tortiously interfered with its contracts.  These claims cannot be cleanly severed from Celonis' existing claims because they are part and parcel of central issues of this case—as demonstrated by the fact that they were produced as responsive to Celonis' discovery requests on those existing claims.

SAP argues that just as this Court found that SAP's patent counterclaims were properly transferred to one of the other two U.S. patent cases pending between the parties where there was "a lot more overlap" with the counterclaims SAP sought to bring here, Hr'g Tr. 21:18-22, Feb. 26, 2026, so too are Celonis' trade secret claims better litigated elsewhere.  But there is one critical difference.  Unlike the case of SAP's patent counterclaims—where patent claims were being litigated by the parties in two other U.S. fora, there are no other trade secret claims pending between the parties in the United States.  Instead, SAP makes a halfhearted attempt to point the Court to a trade secret declaration being sought in Germany, and a patent claim pending in the Eastern District of Texas. Opp. 2.  But this Court has already rejected SAP's comity arguments with respect to that German proceeding, Dkt. 100 at 1, and transferring competitive intelligence-based trade secret claims away from the antitrust case they arose out of, and to technical patent infringement proceedings where there is no overlap, and simply because both fall under the broad umbrella of "intellectual property," Opp. 5, defies both judicial economy and common sense.

Further, contrary to SAP's contention, adding Celonis' trade secret misappropriation claims will not "greatly alter the nature of the litigation" but will simply enable Celonis to raise additional claims – and additional bases for its existing claims – based on one more facet of SAP's overall anticompetitive strategy that is already the core of this case.  Further, the case law is clear that the mere addition of new claims is not sufficient in itself to constitute undue prejudice.  See *United*

*Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) ("If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim.").  Because Celonis' UCL claim relies on additional actions by SAP in addition to trade secret misappropriation, Celonis' UCL claim would not be superseded by Celonis' CUTSA claim.

*States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (the mere addition of new claims in motion for leave to amend insufficient to support denial under Rule 15).

Further, unlike SAP's patent counterclaims, Celonis' trade secret claims will not cause a significant disruption to the case schedule and will not cause prejudice to SAP. Retaining SAP's patent counterclaims in this case would have necessitated the addition of various patent-specific procedures and hearings, taking discovery from numerous new custodians and witnesses (both fact and expert) and extending the case schedule by over fifteen (15) months, as evidenced by SAP's proposed amended schedule. See Dkt. 140-1. By contrast, there is significant overlap in both the documents and witnesses relevant to Celonis' trade secret claims and its existing claims, such that only a modest extension of the schedule is necessary to accommodate them. Such overlap is illustrated by the fact that the documents which form the basis of these claims were produced by SAP in response to discovery requests regarding Celonis' existing claims, by the fact that Celonis is already deposing SAP witnesses key to the trade secret misappropriation claims such as Colleen Speer and Kevin Hanson, and by the fact that Celonis requested only a twelve (12) week extension, not a "wholesale reset" of the Court's schedule. Opp. 2. The mere fact that SAP will need to engage in some additional discovery to defend against Celonis' trade secret claims is not sufficient for a finding of undue prejudice. See *Genentech, Inc. v. Abbott Lab'ys*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989) (granting motion to amend pleading and holding that, although allowing plaintiff to amend pleading might require defendant to depose numerous witnesses and necessitate additional document searches and written discovery may result in delay to case schedule, this did not constitute undue prejudice warranting denial of motion); *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 16-cv-00119-HSG, 2019 WL 95927, at *3 (N.D. Cal. Jan. 3, 2019) (finding no undue prejudice even after fact discovery had closed and some additional discovery was anticipated for new claims). Nor would discovery have to be "reopened" for Celonis' Motion to be granted, as even fact discovery remains open presently.

Finally, SAP resorts to a veiled threat. SAP argues that Celonis' requested twelve-week extension is insufficient because, if Celonis is granted leave, SAP will respond by asserting trade secret counterclaims of its own. That argument should be rejected. If SAP believed it had good-

10

faith trade secret counterclaims, it was required to act diligently under the same rules discussed above. SAP cannot hold purported claims in reserve and then cite its own threatened tactical escalation as a reason to deny Celonis leave to amend. Nor can SAP manufacture prejudice by threatening to expand the case further if Celonis is permitted to plead claims supported by SAP's own recent productions. Any additional delay beyond the extension requested by Celonis would be caused by SAP's own actions, not Celonis' actions in properly raising its trade secret misappropriation claims less than two weeks after discovering the basis for them.

## CONCLUSION

In view of the foregoing, Celonis respectfully requests that it be granted leave to file its SAC and to extend the case schedule by twelve (12) weeks.

Dated: May 26, 2026                    Respectfully submitted,


By: */s/ Lauren B. Cury*
HOGAN LOVELLS US LLP
Lauren B. Cury (*pro hac vice*)
Jennifer Fleury (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Celine J. Crowson (*pro hac vice*)
Christopher Fitzpatrick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
lauren.cury@hoganlovells.com
jennifer.fleury@hoganlovells.com
justin.bernick@hoganlovells.com
anna.shaw@hoganlovells.com
celine.crowson@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

Michael M. Maddigan (Bar No. 163450)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.maddigan@hoganlovells.com

Russell Tan (*pro hac vice*)
HOGAN LOVELLS US LLP
609 Main Street
Suite 4200
Houston, TX 77001
Telephone: (713) 632-1437
russell.tan@hoganlovells.com

Sarah Keller (*pro hac vice*)
HOGAN LOVELLS US LLP
8350 Broad Street
17th Floor
Tysons, VA 22102
Telephone: (703) 374-2300
sarah.w.keller@hoganlovells.com

Christopher C. Wheeler (Bar No. 224872)
Alexis J. Loeb (Bar No. 269895)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
cwheeler@fbm.com

12

aloeb@fbm.com

*Attorneys for Plaintiffs Celonis SE and Celonis, Inc.*

13