Michael M. Maddigan (Bar No. 163450)
HOGAN LOVELLS CADWALADER US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.maddigan@hlc.com

Jennifer Fleury (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Lauren B. Cury (*pro hac vice*)
Celine J. Crowson (*pro hac vice*)
Christopher Fitzpatrick (*pro hac vice*)
Charles A. Loughlin (*pro hac vice*)
Josh Short (*pro hac vice*)
Molly Pallman (*pro hac vice*)
Jonathan Sussler (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
jennifer.fleury@hlc.com
justin.bernick@hlc.com
anna.shaw@hlc.com
lauren.cury@hlc.com
celine.crowson@hlc.com
chris.fitzpatrick@hlc.com
chuck.loughlin@hlc.com
josh.short@hlc.com
molly.pallman@hlc.com
jonathan.sussler@hlc.com

Russell Tan (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
609 Main Street
Suite 4200
Houston, TX 77001
Telephone: (713) 632-1437
russell.tan@hlc.com

Sarah Keller (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
8350 Broad Street
17th Floor
Tysons, VA 22102
Telephone: (703) 374-2300
sarah.w.keller@hlc.com

Christopher C. Wheeler (Bar No. 224872)
Alexis J. Loeb (Bar No. 269895)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
cwheeler@fbm.com
aloeb@fbm.com

*Attorneys for Plaintiffs Celonis SE and Celonis, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CELONIS SE and CELONIS, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAP SE and SAP AMERICA, INC.,<br><br>*Defendants*. | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION OF MINUTE ENTRY AND AMENDED CASE SCHEDULE ORDER, DKT. NOS. 268, 273**<br><br>**Case No. 3:25-cv-02519-VC**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor |

The Amended Case Schedule provides for additional discovery "to accommodate the new allegations and claims raised in the Second Amended Complaint." Dkt. No. 273 at 2 n.2. SAP negotiated, agreed to, and eventually proposed that language jointly with Celonis to govern further discovery in this action. The Court adopted the Parties' proposal in full, and there is no dispute that the "new allegations" in the Second Amended Complaint include those concerning the New Data Access Policy. Now, though, SAP is relying on language in the Court's preceding minute entry to rewrite the Amended Case Schedule and remove any potential for discovery on the New Data Access Policy. Each of SAP's three arguments run headlong into the plain text of the Amended Case Schedule and betray SAP's true intention: to insulate its brazenly anticompetitive New Data Access Policy—put into effect just five days before Celonis filed its Second Amended Complaint—from scrutiny. That strategy is borne out again, Dkt. No. 296-6 at 3, and again, Dkt. No. 296-7 at 4–5, in the correspondence appended to SAP's Opposition. And despite alluding to the "extensive discovery" on the New Data Access Policy, SAP concedes that it has neither searched for nor produced any documents concerning it. Dkt. No. 296 at 5. Celonis respectfully requests the Court clarify that the stipulated Amended Case Schedule controls, Dkt. No. 273, and thereby put an end to SAP's obstructionism. With such clarification, the Parties can then negotiate the scope of such discovery and seek Judge Kim's assistance if necessary.

*First*, SAP latches onto this Court's passing statement in the minute entry permitting the Second Amended Complaint that discovery "will be limited to the new trade secret claims." Dkt. No. 268. But *before* that entry hit the docket, SAP had already agreed to further discovery on the "new allegations"—with no carve out or limits on those concerning the New Data Access Policy— "raised in the Second Amended Complaint." Dkt. No. 273 at 2 n.2; *see* Dkt. No. 296-7 at 6 (SAP accepting operative language in Amended Case Schedule prior to the Court's minute entry). And shortly *after* that minute entry, the Court adopted the Amended Case Schedule that, by its own terms, permits Celonis to request additional discovery on SAP's New Data Access Policy, notwithstanding the Court's earlier statement. Dkt. No. 273 at 2 n.2. Celonis believes the Amended Case Schedule— which SAP agreed to before the Court's Minute Order—governs the scope of future discovery under the Second Amended Complaint; SAP, by contrast, now asserts that the Court's earlier language

limits any additional discovery to Celonis' new trade secret claims. The Court's guidance on this narrow issue is necessary to ensure that discovery under the Second Amended Complaint proceeds expeditiously and to avoid snowballing disputes before Judge Kim over the scope of the discovery authorized by the Court.

***Second***, SAP ties itself in knots arguing that the factual allegations concerning the New Data Access Policy—included only in the Second Amended Complaint—in fact concern issues related "solely" to the First Amended Complaint. That view refutes itself. Celonis filed the First Amended Complaint on July 21, 2025, the New Data Access Policy came into effect nine months later on April 26, 2026, Celonis then moved for leave to amend and to add allegations concerning that Policy five days later on May 1, 2026, and the Court ultimately allowed the Second Amended Complaint to proceed on June 25, 2026. SAP previously imposed a broader set of exclusionary practices that were the subject of Celonis' original antitrust allegations. But the New Data Access Policy is a dramatic expansion of that anticompetitive campaign and discovery into its earlier phases cannot serve as a stand-in for discovery on SAP's new and deepening exclusionary acts. Moreover, SAP's selective description of the German Federal Cartel Office's ("FCO") recent decision ignores that the agency largely based its conclusions on SAP's stipulated "commitment to keep one of the current data extraction options available . . . for the duration of the ongoing civil proceedings in the US" by way of the Parties' stipulation, Dkt. No. 83, resolving Celonis' motion for a preliminary injunction. *See* Bundeskartellamt [Federal Cartel Office], Case No. B7-1-25-15 (Ger. 2026), at 2, https://www.bundeskartellamt.de/SharedDocs/Entscheidung/EN/Fallberichte/Missbrauchsaufsicht/2026/B7-1-25-15.pdf. The FCO's pointed recognition of and reliance on the fact that the legality of SAP's exclusionary conduct was being litigated in *this* case underscores the importance of discovery into the New Data Access Policy. *Id.* at 3.

For that reason, before the Court allowed the Second Amended Complaint to proceed, Celonis requested that SAP supplement its previous document productions pursuant to Rule 26(e) to account for the New Data Access Policy. *See* Dkt. No. 296-6 at 10; *cf. Spears v. First Am. Eappraiseit*, No. 08-cv-00868, 2014 WL 11369808, at *2 (N.D. Cal. June 17, 2014) ("Rule 26(e) requires a party to supplement or correct its prior disclosures or responses, whether the previously

omitted information was known at the time of the initial response or was later acquired."). When SAP refused, the Parties agreed on a briefing schedule to raise the issue with Judge Kim. *See* Dkt. No. 296-6 at 3. In the interim, however, the Court granted Celonis' motion for leave to file the Second Amended Complaint. *Id.* at 1. Because Celonis anticipated additional discovery on the new allegations raised in the now-operative Second Amended Complaint, including the New Data Access Policy, the need to raise SAP's earlier discovery failings with the Court dissipated and Celonis withdrew that motion on the understanding that "the parties will be able to work collaboratively over the remainder of discovery." *Id.* Regrettably, SAP's backtracking has necessitated the instant motion. There is no space between Celonis' representations to the Court at the June 25, 2026 hearing and its position today. Celonis is not seeking to reopen discovery wholesale on its antitrust claims from the First Amended Complaint, it only seeks discovery "to accommodate the new allegations and claims raised in the Second Amended Complaint." Dkt. No. 273 at 2 n.2.

*Third*, SAP cites various instances in which Celonis questioned its corporate designees and employees about the New Data Access Policy to argue that there "is no gap in the record that new or expedited discovery is needed to fill." Dkt. No. 296 at 7. These references, too, are self-defeating. Of course, depositions alone do not obviate the need for document productions and interrogatory responses, both of which are essential to effective cross-examination and uncovering contemporaneous records that are the backbone of any discovery record.[1] SAP later concedes as much by offering—for the first time—that it "is willing to reasonably supplement discovery" on the

---

[1] Because SAP has produced no documents concerning the New Data Access Policy, Celonis' deposition questioning has necessarily been cabined to the text of the publicly available policy. *See* Dkt. No. 296-2. Notably, during his April 16, 2026 deposition, SAP's CEO denied that the policy *even existed*—stating that "there are no new policies in place whatsoever"—only to reverse course a week later and publicly tout to shareholders that SAP "need[ed] to start throttling" mass data requests. Dkt. No. 296-6 at 10; *see also SAP Q1 2026 Earnings Call Transcript*, YahooFinance (Apr. 23, 2026), https://finance.yahoo.com/quote/SAP/earnings/SAP-Q1-2026-earnings_call-403250.html. And SAP's corporate designee, whose testimony SAP selectively attaches to its Opposition, was unable to answer basic questions concerning the New Data Access Policy, testifying that he was "not familiar with the . . . full breadth of this policy, so my response will be based upon my interpretation of what I read in front of me," Dkt. No. 296-8 at 228:3–6, he did not know whether the policy applied to process mining solutions, *id.* at 235:16–23, and he did not know if the policy affected whether customers' use Celonis, *id.* at 226:24–227:5, or whether Celonis' data extractor was subject to the policy, *id.* at 224:3–6.

Reply in Support of Plaintiffs' Motion for
Clarification - Case No. 3:25-cv-02519-VC                    3

policy. *Id.* at 2.[2] To date, SAP has neither produced a single document nor answered any written discovery about the New Data Access Policy. While Celonis welcomes SAP's newfound willingness to engage in conferrals on this matter, it does not obviate the need for the Court's guidance. This is because even in offering to "supplement discovery," Dkt. No. 296 at 2, SAP maintains its position that Celonis should be prohibited from serving "new requests beyond those already propounded." In this way, SAP seeks to limit Celonis to requests, deposition hours and other associated limits and deadlines, including with respect to third party discovery, propounded and negotiated months before the New Data Access Policy was even announced. Absent the Court's guidance, the Parties' conflicting interpretations over which of this Court's Orders controls will thus continue to impede both party and non-party discovery.

Accordingly, Celonis respectfully requests that the Court clarify its Order regarding discovery under the Second Amended Complaint and confirm that Celonis is entitled to discovery on the New Data Access Policy allegations.

Dated: August 3, 2026

Respectfully submitted,

By: */s/ Jennifer Fleury*

Jennifer Fleury (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Lauren B. Cury (*pro hac vice*)
Celine J. Crowson (*pro hac vice*)
Christopher Fitzpatrick (*pro hac vice*)
Charles A. Loughlin (*pro hac vice*)
Josh Short (*pro hac vice*)
Molly Pallman (*pro hac vice*)
Jonathan Sussler (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
555 13th Street NW

---

[2] Although SAP claims "the meet-and-confer process broke down when Celonis filed this motion," the correspondence SAP cites in support tells a very different story. Dkt. No. 296 at 4 (citation modified). SAP made no offer to consider discovery on the New Data Access Policy. Instead, its discovery emails provided a lengthy soliloquy making identical points to those marshalled in opposition to the present motion, concluding with SAP's lead counsel stating that "I would not have reopened discovery [on the New Data Access Policy]—that makes no sense." Dkt. No. 296-7 at 4–5. Following the filing of SAP's Opposition, however, SAP now states that it no longer objects to conferring over "reasonable" requests for documents related to the New Data Access Policy to supplement Celonis' existing requests for production, but SAP continues to object to Celonis issuing new document requests. While Celonis welcomes that development and will promptly confer with SAP, the Parties maintain the same threshold dispute as to which Order controls.

Reply in Support of Plaintiffs' Motion for
Clarification - Case No. 3:25-cv-02519-VC          4

Washington, DC 20004
Telephone: (202) 637-5600
jennifer.fleury@hlc.com
justin.bernick@hlc.com
anna.shaw@hlc.com
lauren.cury@hlc.com
celine.crowson@hlc.com
chris.fitzpatrick@hlc.com
chuck.loughlin@hlc.com
josh.short@hlc.com
molly.pallman@hlc.com
jonathan.sussler@hlc.com

Michael M. Maddigan (Bar No. 163450)
HOGAN LOVELLS CADWALADER US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.maddigan@hlc.com


Russell Tan (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
609 Main Street
Suite 4200
Houston, TX 77001
Telephone: (713) 632-1437
russell.tan@hlc.com

Sarah Keller (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
8350 Broad Street
17th Floor
Tysons, VA 22102
Telephone: (703) 374-2300
sarah.w.keller@hlc.com

Christopher C. Wheeler (Bar No. 224872)
Alexis J. Loeb (Bar No. 269895)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
cwheeler@fbm.com
aloeb@fbm.com

*Attorneys for Plaintiffs Celonis SE and Celonis, Inc.*

Reply in Support of Plaintiffs' Motion for
Clarification - Case No. 3:25-cv-02519-VC          5